[Civ. No. 20434.   Second Dist., Div. One.   June 27, 1955.]

DAN E. HARD, Appellant, v. HOLLYWOOD TURF CLUB (a Corporation) et al., Defendants; L. E. DIXON COMPANY (a Corporation), Respondent.

[Civ. No. 20433.   Second Dist., Div. One.   June 27, 1955.]

HARRY MACOFSKY, Appellant, v. L. E. DIXON COMPANY (a Corporation), Respondent.

Samuel P. Young, Seth M. Hufstedler and Francis J. Gabel for Appellants.

Schell, Delamer & Loring for Respondent.

WHITE, P. J.—Plaintiffs Dan E. Hard and Harry Macofsky were employees of Arenz-Warren Company, a subcontractor who did painting on a grandstand of the Hollywood Turf Club which was in the course of being reconstructed. Defendant L. E. Dixon Company, a corporation, was the general contractor on the project. Plaintiffs were engaged as painters, employed by Arenz-Warren Company. Both sustained serious personal injuries when a high scaffolding which was erected and the materials for which were furnished by the subcontractor Arenz-Warren Company, and upon which they were working, collapsed and dropped them to the floor.

Plaintiffs filed separate personal injury actions. Plaintiff Hard's action was tried first, resulting in an award in his favor of $55,000 damages by a jury against defendant Dixon Company. As to the defendant Hollywood Turf Club, a nonsuit was granted. Defendant Dixon Company's motion for a new trial was denied and the latter appealed. Division Two of this court reversed the judgment and ordered a new trial (*Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716].) A hearing was denied by the Supreme Court. The case of plaintiff Hard was reset for trial and the action of plaintiff Macofsky, which had not theretofore been tried, was consolidated with it for the purpose of trial.

When the two cases were called for trial, the trial judge held a "pre-trial" hearing in his chambers, going over the various issues raised by the pleadings and by the prior opinion on appeal in the Hard case. At the pretrial, all parties stipulated that all of the evidence, both oral and documentary, admitted in plaintiff Hard's first trial should be admitted in the consolidated trial for the purposes of the court's ruling upon plaintiffs' offers of proof and upon defendant's motion for a nonsuit. The court sustained defendant's objections to each and every one of plaintiffs' offers of proof. The court granted defendant's motions for a judgment of nonsuit in

each case, and the judgments were accordingly entered against plaintiffs.

Motions for a new trial were denied and each plaintiff appeals from the judgment against him. By stipulation both appeals are presented on a consolidated record.

At the pretrial hearing, wherein it was stipulated that all of the evidence, both oral and documentary, admitted in plaintiff Hard's previous trial should be admitted in the second consolidated trial, the court stated that it was considering the opinion rendered in *Hard* v. *Hollywood Turf Club, supra,* to determine what was thereby established as the law of the case, and suggested that counsel for plaintiffs make offers of proof "as to any additional evidence they might have in addition to that that was presented to the trial court in the first instance," so that the court could rule whether these offers presented any additional matters of fact not introduced at the first trial. The suggested procedure was agreed to by stipulation. It was then further agreed that, "as evidenced by the transcript in the Hard case," the following constituted portions of the evidence.

"1. O. D. Malone was employed as foreman of the Arenz-Warren Company, Incorporated, being painting subcontractor, and acting in the scope of his employment, and he was not an employee of L. E. Dixon Company.

"2. Said O. D. Malone while in the scope of such employment helped to physically move and re-erect the scaffold on which plaintiffs were standing at the time of the accident.

"3. The scaffold had so been removed and re-erected within two or three hours before said accident occurred.

"4. Dan Hard was not present when such scaffold was re-erected, the plaintiff Harry Macofsky was present and observed O. D. Malone as above referred to remove and erect said scaffold; that said plaintiff Macofsky during said re-erection of said scaffold helped move one of the planks to the new location where said scaffold was re-erected; *that except as hereinabove in this paragraph set forth all evidence relating to all issues of alleged negligence of said Defendant L. D. Dixon Company is identical in the two cases."* (Emphasis added.)

So far as we are advised or have been able to discover, plaintiffs' offers of proof added nothing of consequence to the facts adduced at the prior trial other than, (1) that the foreman of Arenz-Warren built the scaffold, (2) Macofsky saw the scaffolding being moved, (3) Macofsky had nothing

to do with its construction, except to help move one plank, and (4) both Macofsky and Hard suffered severe personal injuries. And, as pointed out by respondent, all of the foregoing, except the mention of injuries in subdivision (4), refers to and is in the record only as to plaintiff Macofsky, and as further pointed out, adds little if anything of consequence to the facts which were before the trial and appellate tribunals at the first trial.

For a consideration of what we regard as the determinative issues presented on these consolidated appeals, we consider the following as pertinent and uncontradicted facts adduced at both trials.

Defendant Dixon Company contracted with Hollywood Turf Club to perform services as a general contractor in the remodeling and renovating of part of the grandstand at the Hollywood Park Race Track. Dixon undertook this work on a "cost plus fixed fee" basis, and in order to fulfill the terms of the contract, it was necessary to engage the services of subcontractors. All subcontracts had to be approved by the architect and the turf club. About 21 subcontractors were employed on the job, one of which was Arenz-Warren, the painting subcontractor. Harry Moore, superintendent for Arenz-Warren, was in charge of all painting at the race track. Directly under Mr. Moore there were two foremen, Mr. Sheldon and Mr. Malone, who were in charge of rigging scaffolds and directing the painters on the job. Both of these foremen were employed by Arenz-Warren. Arenz-Warren carried its own payroll, workmen's compensation and social security for the men that they employed. They handled all of the details of the work themselves, although they were under the general direction and control of the architect—the owner's agent. Arenz-Warren received general instructions from Dixon Company, but these instructions only pertained to the work which was to be done. Dixon Company did not direct the details of the manner in which the work was to be done, nor did Dixon Company furnish Arenz-Warren with any equipment or material. The two foremen testified that they received their orders directly from Arenz-Warren, and not from Dixon.

Hard was an employee of Arenz-Warren. He received his instructions from the foreman, Mr. Malone. Mr. Hard had no discussion with the Dixon Company or the turf club with reference to his work. He knew that Arenz-Warren was the painting subcontractor and that he was working for

Arenz-Warren. Macofsky, who was also injured in this accident and was working on the same scaffold with the plaintiff, Hard, testified that he reported to foreman Malone who was supervising the job. Macofsky stated that he worked for Arenz-Warren and that no one told him what to do other than Mr. Malone, the Arenz-Warren foreman.

Plaintiffs introduced evidence to show that the scaffold upon which the men were working was defective. And although plaintiffs alleged in their complaints that defendant Dixon Company built and owned this scaffold, the undisputed evidence discloses that this scaffold, as well as all other scaffolds used for painting, was constructed by Arenz-Warren. Mr. Paul Kahn, a painter, testified that Arenz-Warren men hoisted the materials up to the scaffold; that all the men who constructed the scaffold were employees of Arenz-Warren; and that Arenz-Warren men moved the scaffold when it was necessary to do so. Plaintiff Macofsky testified that the scaffolding was built by Mr. Malone and that Mr. Malone moved the strip of steel which formed part of the construction of the scaffold. This testimony was corroborated by the evidence given by Benny Wiegers. Mr. Malone, an experienced rigger, admitted that it was he who designed and built the scaffold and was in charge of its erection.

Prior to the time plaintiff Hard ascended the scaffold, he was aware of its condition. His foreman, Mr. Malone, had told him that he would not need a safety belt. Hard thought that it was safe to work on the scaffolding without a safety belt, and he did not tell his foreman or anybody else that he was unwilling to work on the scaffolding without a safety belt. Hard knew that if he had demanded a safety belt he could have had one, and he readily admitted that it was customary for him to look pretty carefully before he climbed onto a scaffold.

And, as to plaintiff Macofsky, the evidence, without contradiction, establishes that he stood in the same relationship to defendant Arenz-Warren Company and defendant Dixon Company as did plaintiff Hard.

We shall first give consideration to the appeal of plaintiff Hard because we are satisfied that as to him this cause must be determined, as contended by respondent, by an application of the principle of the law of the case.

The rule of the law of the case is the rule requiring both trial and appellate tribunals to follow the rules laid down upon a former appeal whether such rules are right or

wrong. ██ And, upon the second appeal the court will look not only to the opinion rendered by the court on the previous appeal, but also to the record for the purpose of determining whether or not the law of the case should control in the determination of the second appeal. ██ On the second appeal, even though the evidence may be different, *unless it is substantially different in a material respect,* the doctrine of the law of the case applies.

Appellants insist that the only question decided by the former appeal was that "the trial court had committed prejudicial error in instructing the jury that respondent was under a statutory duty to supply appellant (Mr. Hard) with scaffolding that conformed to standards set by Labor Code, sections 7151 and 7152." However, an examination of the decision rendered in the previous appeal does not support this claim. A clear statement of the facts involved in this case and an equally clear discussion of the law of the case may be found in the opinion rendered when this case was before the court after the first trial (*Hard* v. *Hollywood Turf Club, supra*). No good purpose would be served by repeating them here. Suffice it to say, that after considering the relationship existing between appellant Hard and the respondent Dixon Company, as hereinbefore narrated, the court on the former appeal said (at p. 269) : "The Legislature could not reasonably have intended to operate a hardship upon employers by making one contractor liable for the neglects of another. If as the generalissimo of a construction job, the general contractor leaves holes in the floor or grease upon it whereby any invitee might suffer injury, of course he would be liable. But where he has agreed by subcontract with an experienced and reputable painter to paint the ceilings and walls of the building under repair and the reputable painter negligently constructs an inferior scaffold that cannot support his workmen, it is nothing short of oppression to require the general contractor to pay the total amount of damages suffered by the injured workman as the result of the painter's negligence and thereby relieve the subcontractor of all charges he might have been obliged to pay on account of the accident."

". . . The lawmakers must have reflected that to impose the duty upon the general contractor directly to oversee all labor being performed and to inspect every device imported for use by the workmen on a particular construction and to impose nondelegable duties upon him to enforce all statutory safety provisions would be to place an extremely onerous

burden upon him who has the general control over the ultimate result of the labor done yet without control or management of the means utilized to achieve the purpose planned. To adjudge appellant liable for errors of judgment on the part of 21 separate subcontractors and to hold him responsible for the enforcement of the safety statutes would be tantamount to making it an insurer of every subcontractor's activities. For appellant efficiently and effectively to direct the operations of 21 subcontractors essential to the successful consummation of so stupendous a task as the contract with the turf club demanded would have required such an outlay in time, labor and expense as to frustrate computation. At the same time it is doubtful that the undertaking of such manifold duties would have proved to be of greater safety or protection to the workers on the grandstand than they enjoyed under the provisions of the Workmen's Compensation and Insurance Act whereby every immediate employer is in duty bound to furnish his employees with all necessary, safe appliances and safe working area. Certainly such employer is in the best possible position more effectively to guard his own employee's welfare. Because the Legislature adopted this view it did not direct the scaffolding legislation to apply to an owner or general contractor. Adequate provision was made for the benefit of an injured worker to recover from his own employer before the Industrial Accident Commission which was granted judicial power.'' And, from the foregoing and other reasoning contained in the previous opinion the court concluded that the respondent herein was under no statutory nondelegable duty to provide the safeguards required by the Labor Code sections (7151 and 7152) relied upon by appellant Hard herein. ■ Since the former decision in the instant case resolved all the questions here presented adversely to the contentions of appellant Hard, the decision becomes the law of the case and is controlling here.

Coming now to a consideration of the appeal of Harry Macofsky, we deem it unnecessary to pass upon the applicability of the doctrine of the law of the case in his appeal for the reason that under well-known and firmly established rules governing the power of the court to grant a nonsuit, we are satisfied that the conclusion of the trial court was correct. ■ The record reflects that appellant Macofsky, like appellant Hard, was the employee of the subcontractor Arenz-Warren Company, and not of respondent Dixon Company. The latter had no control, management or direction

over appellants in the work they were doing, nor did respondent general contractor direct the details of the manner in which the work was to be done by the subcontractor or furnish any of the scaffolding or other equipment or materials with which the painting work was to be done. ■ As stated by the court in the previous appeal (*Hard* v. *Hollywood Turf Club, supra*, p. 274): "A general contractor may be liable for injuries resulting from defective appliances only when he has the privilege of selecting them or the materials out of which they are made (citing cases), but he is not liable for injuries caused by defective scaffolds or other instrumentalities unless he has supplied them (citing cases)."

While appellant Macofsky, strictly speaking, may not come within the doctrine of the law of the case, nevertheless, he relies upon the identical evidence which was given at the first trial of appellant Hard, and which evidence, under the previous decision of this court, was held to establish that respondent Dixon Company was not the employer of appellant. ■ From this it necessarily follows that respondent Dixon Company had no statutory duties to fulfill toward either of the appellants herein. Manifestly, it must be said that there is no evidence of sufficient substantiality to support a verdict in favor of appellant Macofsky, if such a verdict was returned (*Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 754 [185 P.2d 94]). The motion for a nonsuit was therefore properly granted as to appellant Macofsky.

For the foregoing reasons, the judgments, and each of them, from which these appeals were taken, are affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied July 20, 1955, and appellants' petition for a hearing by the Supreme Court was denied August 17, 1955. Carter, J., was of the opinion that the petition should be granted.