[Civ. No. 46916. First Dist., Div. One. Oct. 25, 1982.]

DONALD F. ELDRIDGE et. al., Plaintiffs and Appellants, v.
ALYCE LEE BURNS, Defendant and Appellant.

**COUNSEL**

Steinhart, Falconer & Morgenstein, Steinhart & Falconer, Marc H. Monheimer and Dov M. Grunschlag for Plaintiffs and Appellants.

Chickering & Gregory, Crist, Crist, Griffiths, Bryant, Schulz & Biorn, Crist, Griffiths, Bryant, Schulz, Biorn & Clohan, Frank Lee Crist, Jr., Patricia J. Van Horn and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Defendant and Appellant.

OPINION

BANCROFT, J.*—

I

STATEMENT OF FACTS AND PROCEDURAL HISTORY

This is the second appeal in this case. Since the record in this appeal only covers the period since the first appeal, some of the facts and procedural history are quoted from Justice Sims' opinion in *Eldridge* v. *Burns* (1978) 76 Cal.App.3d 396 [142 Cal.Rptr. 845] (Racanelli, P. J. and Elkington, J. concurred). The court stated the facts as follows: "The circumstances and material documents evidencing the transactions between the parties are not disputed and can be found in the findings of fact of the trial court and the exhibits before it. The controversy centers on mixed questions of fact and law set forth in the findings of fact, on the conclusions of law, and on the judgment itself.

"Defendant Alyce Lee Burns purchased the property involved in this litigation, consisting of 750 acres, in 1952. The property is located in the upper Palo Alto foothills within the city limit, and in 1959, it was annexed to the City of Palo Alto and zoned REA (residential estates—one residential unit to one acre). Defendant's husband, Emmett Burns, at all times herein, acted as her agent in matters dealing with property. Mr. Burns and the plaintiff Donald F. Eldridge were both sophisticated in business affairs.

"In 1968, after negotiations between Burns and Eldridge, the property was sold to Eldridge for the agreed sum of $2,050,000, plus an assumption of assessments for sewer and water in approximate amount of $400,000. Six hundred thousand dollars was paid at close of escrow and 150 acres were conveyed to the plaintiff free and clear of any lien of the deed of trust. The balance of $1,450,000 was evidenced by a promissory note. It was secured by the remaining 600 acres and was payable in 10 annual installments. The deed of trust contained provisions requiring the purchaser to pay all taxes and assessments when due; and to further pay all of the indebtedness when due. In addition, it contained a release provision allowing the property owner to release acreage at the rate of one acre for every $3,000 paid upon the promissory note and gave the purchaser the right to select said acreage so long as the buyer selected property that was 'contiguous' to the 150 acres that the purchaser acquired free and clear at close of escrow, and provided, further, that the remaining land, which

_____
*Assigned by the Chairperson of the Judicial Council.

would be subject of the deed of trust would have the right of ingress and egress to a public highway meeting official requirements.

"In 1969 the City of Palo Alto began studying the down zoning of the property in the foothills, which included the subject parcel. During prior years, however, the city had annexed and encouraged development by encouraging the formation of sewer and assessment districts to service residential development in the foothills area. As a result of the city's efforts to encourage development in the foothills, the property became subject to approximately $400,000 assessments for the installation of sewer and water lines. At the time of purchase, it was reasonable for both parties to assume the continuity of the city conduct towards the property.

"Soon thereafter, the city administration changed its course of conduct and started a series of actions which culminated in 1972 in a rezoning of the property into open space, allowing the owner to construct one dwelling for every 10 acres and placing other severe restrictions on the placement and location of any proposed dwellings. The city actions substantially affected the value of the property. Eldridge sought relief against city by filing an action for inverse condemnation. (See *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613 [129 Cal.Rptr. 575].)

"The plaintiff failed to pay taxes and assessments due commencing December 10, 1970, and continuing until the date of the trial. The amount of taxes then due was in excess of $40,000, and the Santa Clara County Tax Assessor claimed that assessments were due in the amount of $230,000 for an aggregate of $270,000 as of June 30, 1975.

"The plaintiff paid the installments of principal falling due in the years 1969, 1970, 1971, 1972, and 1973, in the aggregate sum of $725,000 together with accrued interest. On February 9, 1974, the plaintiff made a formal demand for a reconveyance of 241 acres, representing the acreage to be released at $3,000 per acre for the principal payments made on the note. The defendant on March 18, 1974 made a counteroffer in the form of a conditional request for reconveyance to the trustee under the deed of trust.

"The counteroffer was unsatisfactory to the purchaser and he thereafter failed to rectify a default in the payment of the installment of principal and interest due March 15, 1974. On March 19, 1974, the seller gave notice of. her election to accelerate the due date of the balance of the note and made demand for payment for the entire sum due. On August 7, 1974, the purchaser filed the instant action. . . . At the time of judgment in March 1976, the plaintiff was in default for the payments due in 1974 and 1975 in

the approximate sum of $377,000, and he had made no tender to cure the defaults in those payments and in the taxes and assessments."(*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at pp. 405-408, fns. omitted.)

The Eldridge complaint sought, inter alia, to quiet title to the 241 acres selected for release from the deed of trust, a decree compelling reconveyance to the plaintiffs and a decree prohibiting sale of the property under the deed of trust. The trial court denied plaintiffs any relief. (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 402.) Burns exercised her rights under the deed of trust to take title to the entire property while the case was on appeal. She paid delinquent taxes and assessments and expended attorneys' fees to evict occupants of the property.

On appeal, we reversed and remanded the case for further proceedings. We summarized our findings as follows: "On review it is determined that the right to release the property was not forfeited by the subsequent default of the buyer; that the clause on its face was sufficiently certain to give rise to an obligation to release property; that, because of supervening equitable doctrines protecting the rights of the seller-lender, the demand of the buyer under the clause could not be specifically enforced; and that the trial court erred in not recognizing that the buyer was entitled to some equitable relief to prevent a forfeiture and undue enrichment of the seller, and in failing to enjoin a sale of the whole property without so providing. The judgment must be reversed." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 401.)

Our decision upheld the trial court's conclusion that the release clause was not specifically enforceable. Since Eldridge selected the most intrinsically valuable property for release from deed of trust, leaving Burns with security on 359 acres that were largely inaccessible and undevelopable, we agreed with the trial conclusion " 'that plaintiff attempted to exercise the release provision in an inequitable and unconscionable manner, which severely prejudiced the security of the defendant.' " (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 429.) However, we determined that the trial court erred in permitting the seller to foreclose on all 600 acres without making some provision to prevent forfeiture of plaintiffs' rights deriving from his payment of $725,000. (*Id.,* at p. 438.) We provided certain options for the parties and the trial court on remand. (*Id.,* at pp. 438-440.)

While the case was on appeal, the Mid-Peninsula Regional Open Space District (District) entered into separate agreements with Burns and Eldridge to purchase the property. The District recorded a deed conveying the whole property from Burns to the District in return for the District's paying $2,136,820. The District intervened in the proceedings on remand,

seeking to protect its title. The court below confirmed that the District had title to the entire property. Burns does not contest that finding on appeal. Eldridge has stipulated that: "an *actual* resale of the land under the deed of trust shall not be deemed to be among the dispositions urged by Eldridge in his Brief on file herein . . . ." (Italics in original.) Thus, the District's title is no longer an issue. The District has informed us by letter that it wishes to remain neutral on the issue of allocation of money between Eldridge and Burns.

On remand, the trial court provided that Eldridge receive restitution of the principal he paid less charges for taxes and assessments, interest accrued on the note, and the expenses Burns incurred in evicting people from the land. The charges for taxes and assessments, and interest on the note were calculated based on a cutoff date of February 9, 1974. Eldridge was awarded interest beginning on the same date. February 9, 1974, was the day Eldridge made his formal request for release of 241 acres from the deed of trust. The award is summarized in the following table:

| 1) | Restitution of Principal | $ 725,000.00 |
|----|--------------------------|--------------|
| 2) | Less | |
| | a - taxes, etc. through 2/9/74 | [ 168,118.64] |
| | b - interest on promissory note through 2/9/74 | [ 39,875.00] |
| | c - legal fees for eviction | [ 40,790.36] |
| | | -248,784.00 |
| 3) | Balance | 476,216.00 |
| 4) | 7% Interest from 2/9/74 until judgment 3/1/79 | +168,410.84 |
| 5) | Total | $ 644,626.84 |

## II

### DISCUSSION

A) Introduction

In her appeal Burns presents several variations of essentially the same argument, that the court erred in refusing her offer of proof that she was

unable to obtain possession of the property until December 2, 1977. This factual showing was intended to show that the restitution she owed Eldridge should have been reduced to account for taxes, assessments and interest due up to that date.

Specifically, Burns offered to prove that she could not go on the property after the foreclosure sale in June 1976 because there were people occupying the land. Burns had tried to sell the land earlier but a broker informed her that it could not be sold without eviction of the occupants. Eldridge did not cooperate in evicting the occupants. She evicted the occupants on December 2, 1977. That was the first day Burns had physical possession of all the property. Eldridge filed liens against both the 241 acres he claimed and on the entire 750 acres as well, which also impeded efforts to sell it.

Burns also offered to prove that: Eldridge did not rescind or amend his February 9, 1974, demand for 241 specified acres until the trial court ruled that the demand was inequitable; that Eldridge sought to buy Burns' promissory note held by the Bank of America, which was secured by a deed of trust on Burns' 600 acres; and that Burns sought to prove that interest was due and owing on Eldridge's original promissory note, amounting to $205,054 as of December 2, 1977. Burns paid taxes due through December 2, 1977, totalling $268,318.96.

Burns argues that facts concerning possession of the property are relevant to an equitable resolution of the case. From this she concludes that the trial court erred in failing to consider her offer of proof, that there was no evidence to support the judgment and that the court awarded excessive damages. Burns also argues that the court denied her due process of law because she was not allowed to introduce evidence relevant to the equitable issues and because the court's findings were not based on evidence.

Eldridge replies that this court's decision mandated use of the February 9, 1974, date for calculating the restitution owed to Eldridge. He contends that, although the court formally rejected Burns' offer of proof because it was not relevant to the issues, it nevertheless considered the content of the offers.

Eldridge cross-appeals, contending that he was entitled to a share of Burns' receipts from the sale of the property. Eldridge also challenges the deductions for interest on his promissory note and for Burns' expenses in evicting the occupants of the property.

Finally, Burns challenges the trial court's ruling that Eldridge was entitled to prejudgment interest on the principal that Burns is obligated to

repay. Eldridge replies that our decision required payment of interest based on Civil Code section 3306, which provides for interest on sums owed as restitution in real estate transactions.

The parties' contentions are summarized in the following table:

1) Judgment
$$R = [P - (\text{Tax to '74} + \text{Note Interest to '74} + L)] + \text{Int. from '74}$$

2) Burns' Preference:
$$R = [P - (\text{Tax to '77} + \text{Note Interest to '77} + L)] + \text{Int. From '79}$$

3) Eldridge's two preferences:
$$R^1 = (P - \text{Tax to '74}) + \text{Interest from '74}$$
$$R^2 = \text{Sales Receipts} - [\text{Burns' Share}]^3$$

$3R^1$ represents Eldridge's proposed modifications of the trial court's rescission theory. $3R^2$ represents the theory that he was entitled to share in the sales receipts and the appreciation of the property. In $3R^2$ the bracketed words represent Burns' share of the sales receipts. (359 acres divided by 600 times net receipts.)

EXPLANATORY NOTE

| | |
|---|---|
| R | = Restitution Burns owes to Eldridge under judgment |
| 2)R and 3)R¹ | = Restitution as urged by each party |
| 3)R² | = Sharing the sale proceeds approach sought by Eldridge |
| P | = Principal paid by Eldridge + $725,000 |
| Tax to '74 | = Taxes on property before Eldridge's release request |
| Tax to '77 | = Taxes on property before Burns took possession |
| L | = Burns' legal costs for eviction |
| Interest from '74 | = Interest on Restitution from Eldridge's release request |
| Interest from '79 | = Interest on Restitution from second judgment |
| Note Int. to '74 | = Interest on Eldridge's note before Eldridge's release request |
| Note Int. to '77 | = Interest on Eldridge's note before Burns took possession |
| Sales Receipts | = Burns' receipts from sale to District = $2,136,820 |

B)  Our Direction to the Trial Court:

In *Eldridge* v. *Burns, supra,* 76 Cal.App.3d 396, we set forth three alternatives that the trial court or the parties could use to vindicate Eldridge's rights. We gave Burns the right to pay Eldridge the $725,000 principal received "reduced by the total amount of the taxes and assessments and interest due as of February 9, 1974, together with interest on the balance from that date." (*Id.,* at p. 439.) We provided that if Burns accepted this alternative within 30 days after the filing of the remittitur with the trial court, Burns would receive quiet title to the 600 acres. (*Id.,* at p. 440.) Although Burns did not elect this option, the trial court's judgment followed this approach, except that it granted Burns a deduction for the costs of evicting squatters on the land—a change that benefitted appellant Burns in the sum of $40,790.36. This approach rescinds the sale contract retroactive to February 9, 1974, giving Eldridge restitution of his payments of principal minus Eldridge's contractual tax and interest liability accrued through that date.

The second alternative we provided was that absent a contrary settlement by the parties, the trial court "may order the sale under the deed of trust to be set aside and order a resale of the property. In that event, after the payment of all accrued taxes and assessments and other necessary costs attendant to the maintenance of the property and the sale (exclusive, however, of any fees and costs in *Eldridge* v. *City of Palo Alto, supra,* 57 Cal.App.3d 613), the balance of the proceeds shall be divided in the proportion of 241/600 to buyer and 359/600 to seller. It is assumed that if the 359/600 would produce a surplus over the balance due under the deed of trust, the seller would elect the first alternative, and only elect this alternative so that both buyer and seller would share the loss from depreciation in the market value of the property. Otherwise, under ordinary principles of real property security the surplus would go to the buyer." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 439.)

The third alternative was that Burns could elect to accept the trial court's or Eldridge's division of the property. Burns would receive 359 and Eldridge 241 acres. This theory amounts to enforcement of the release clause, but modified to make the division more equitable. Although we gave Burns the right to elect the first alternative, we also stated that: "The foregoing solutions are not to be considered as exclusive, as it is properly the function of the trial court to provide an equitable resolution of the rights and obligations of the parties as we have expounded them herein." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 440.) The dispository language provided that: "The judgment is reversed and the case is *remanded for*

*further proceedings consistent with the views set forth in this opinion."* (*Ibid.,* italics added.)

In denying Burns' petition for rehearing on February 1, 1978, we stated that Burns "attacks the decision of the court in upholding the validity of the executed contract while acknowledging that she was entitled to some equitable relief; that is, rescission with return of the payments received, or substitution of some other interest in the land, if the purchase and sale was to persist. We adhere to our view that she was not, and is not, entitled to retain all the payments and all of the land. [¶] She also seeks to secure a formulization of the equitable resolution of this case which the trial court has been directed to effect. The items to be considered will vary with the election that she makes. If a rescission is effected retroactive to February 9, 1974, the balance struck would bear interest at the legal rate. If she elects to share the net proceeds of the sale of the property, she is entitled to credit for the outlays made for taxes and expenses incurred in carrying the property since February 9, 1974, and in effecting the 1977 sale, with interest on those sums from the time expended. The source of those funds is of no consequence, and the plaintiffs and appellants are not chargeable with the interest she may have paid to secure the funds for those outlays. It would give respondent double recovery to credit interest on the expenditures, and also interest on the funds borrowed to make them. No other opinion is expressed as to the formulae proposed by the respondent. All the facts on which they are predicated are not in the record. The equitable solution should be determined in the first place, and hopefully decisively, by the trial court, on facts and principles to be presented there. [¶] The petition of respondent Alyce Burns for a hearing by the Supreme Court was denied April 13, 1978." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 440.)

Burns now argues essentially that we reversed the first judgment in order to allow a retrial requiring the taking of evidence. She contends that Eldridge's continued possession of the property would be a crucial issue on retrial, and that therefore the court's rejection of her offer of proof was erroneous. She argues in the alternative that if the appellate decision contained explicit directions for the trial court, the directions required that equitable principles should apply and that the possession issue would be crucial to an equitable resolution. She relies upon the phrase "on facts and principles to be presented there" in our opinion on rehearing to strengthen her argument that evidence taking was required.

Normally, language remanding "for further proceedings consistent with the opinion" does not in itself clearly or unambiguously determine the effect of an opinion on remand.

"The phrase 'reversed and remanded for proceedings consistent with this opinion' is not a phrase of art with only a single meaning. It must be read with the appellate opinion as a whole. In context, the phrase may be no more than a statement that on retrial the trial court is to apply the law of the case, and in that situation the phrase is surplusage. (*Raun* v. *Reynolds* (1860) 15 Cal. 459, 468; *Pillsbury* v. *Superior Court* (1937) 8 Cal.2d 469, 471-472 [66 P.2d 149]; *Clutter* v. *Superior Court* (1934) 140 Cal.App. 135, 138 [35 P.2d 152].) In context, the phrase may be a 'summary method of incorporating by reference directions, as to proceedings on a retrial, specifically indicated in the body of the opinion.' (6 Witkin, Cal. Procedure, *supra*, Appeal, § 556.) Doubt concerning the context in which the phrase is used is resolved in favor of its treatment as surplusage. (*Atchison etc. Ry. Co.* v. *Superior Court* (1939) 12 Cal.2d 549, 555 [86 P.2d 85].)" (*Puritan Leasing Co.* v. *Superior Court* (1977) 76 Cal.App.3d 140, 147-148 [142 Cal.Rptr. 676].)

Our decision in the first appeal provided certain definite directions as to further proceedings. We determined that Burns could elect the rescission option by accepting it within 30 days. We also stated that: "The seller may not be forced to accept 359 acres designated by the buyer or by the court, the buyer having indicated a willingness to accept the 241 acres as so determined." (76 Cal.App.3d, at p. 439.)

We also indicated that further proceedings be limited to the issue of remedy. Just prior to setting forth the three solutions discussed above, Justice Sims wrote "We conclude that the trial court erred in permitting the seller to foreclose on all 600 acres without making some provision to prevent the forfeiture of such rights as had accrued to the buyer prior to the default on March 15, 1974. The judgment must be reversed and the cause remanded for further proceedings to that end." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 438.)

This sentence, in conjunction with the ensuing discussion of equitable remedies demonstrates we contemplated a proceeding limited to the remedy question. This is a binding direction under California law. (*Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 655 [242 P.2d 1]; *Rice* v. *Schmid* (1944) 25 Cal.2d 259, 263 [153 P.2d 313]; *Phillips* v. *Western Cattle Feeders* (1964) 230 Cal.App.2d 951, 960 [41 Cal.Rptr. 443]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 554, pp. 4495-4496.) The statement in our opinion that: "The equitable solution should be determined in the first place, and hopefully decisively, by the trial court, on facts and principles to be presented there." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 440) was not a direction that evidence be taken. Moreover, clearly it was applicable only if the first alternative was not used. Whether to take evidence was a matter for the court's discretion.

## C) Abuse of Discretion

■ The case was remanded in order to "provide an equitable resolution of the rights and obligations of the parties as we have expounded them herein." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 440.) The equitable principle involved was that "the buyer was entitled to some equitable relief to prevent a forfeiture . . . ." (*Id.,* at p. 401.) Instead of providing a single formula for relief, we stated that the equitable solution should be determined by the trial court "on facts and principles to be presented there." (*Id.,* at p. 440.)

On remand, Eldridge moved for "judgment pursuant to decision of court of appeal." Burns opposed this motion. Burns also made an offer of proof concerning her inability to take possession of the property until 1977. The trial judge declared: "I feel that the most equitable result that will conform most to what the Appellate Court said would be the restitution approach, that their—Eldridge was not entitled to specific performance, the reconveyance under the release clause, but he should have been paid money. So I intend to proceed along that basis. . . . [¶] . . . I feel that under the wording of the Appellate Court, Burns is not entitled to credit for taxes and assessments after February 9, '74, and similarly studying the opinion I feel that Burns is not entitled to interest that otherwise would have been payable after February 9, '74."

This approach was echoed in the findings of fact, which stated: "16. By reason of the aforesaid sale to the District, Burns obtained the benefits of the appreciation of the entire 610-acre property and retained the surplus of the net sale proceeds over the amount of plaintiffs' indebtedness. Accordingly, it would not be equitable to charge plaintiffs with taxes and assessments on the property due after February 9, 1974, nor with interest due after that date on plaintiffs' promissory note, nor with costs attendant to the maintenance of the property and its sale to the District, nor with any other amounts, without at the same time crediting plaintiffs with the aforesaid surplus and with a share of the benefits of the appreciation of the property proportionate to their interest therein."

It is evident that the trial court considered Burns' offer of proof, but found it irrelevant to the remedial approach that it took. Burns vigorously argued that possession of the property was critical to the determination of the parties' rights and obligations. But her briefs do not cite any authority for this assertion. There is authority for the proposition that when a buyer defaults on a real estate purchase agreement, the seller is entitled to recover the property's use value during the entire period of the buyer's possession. (*Kosloff* v. *Castle* (1981) 115 Cal.App.3d 369, 376 [171 Cal.Rptr. 308];

*Kudokas* v. *Balkus* (1972) 26 Cal.App.3d 744, 753 [103 Cal.Rptr. 318].) However, the present case is different, since Eldridge had a credible claim to title to 241 acres of the parcel.

We held that the release clause upon which Eldridge relied was valid (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 426) and that "In view of the state of the law at the time the release clause was prepared we cannot fault the buyer for attempting to enforce the clause according to its literal terms." (*Id.,* at p. 437, fn. omitted.) Eldridge was not viewed, simply by virtue of his making his claim, as a wrongdoer. Furthermore, Burns did not argue that she was entitled to *rental value* for the period through December 2, 1977—she merely sought taxes and interest. We find no abuse of discretion.

D) The Law of the Case

■■■ The trial court's decision is sustainable based on the law of the case. The trial court closely followed the restitution/rescission solution we provided. In our decision we concluded that the restitution theory using a cutoff date of February 9, 1974, was a viable alternative; hence, the trial court did not err in choosing it. Its choice was not foreclosed merely because Burns did not, within 30 days, choose it.

The California Supreme Court has described the principles of the law of the case as follows: "As stated by Witkin, 'the doctrine of "law of the case" deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 633, p. 4552, original italics; see *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049].) But, the 'discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally [regarded] as obiter dictum and not as the law of the case.' (*Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 474 [304 P.2d 7].) 'It is fundamental that the point relied upon as law of the case must have been *necessarily involved* in the case.' (Witkin, *supra,* § 647, p. 4564, original italics.)" (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 498 [102 Cal.Rptr. 795, 498 P.2d 1043].)

Burns contends that any statements in the prior opinion relating to the proper remedy were merely dictum. She relies in part on *Weightman* v. *Hadley* (1956) 138 Cal.App.2d 831, 840 [292 P.2d 909]. However, the first appellate decision in that case was "an unqualified reversal." In the instant case, our opinion provided that acceptance of the rescission solution

would eliminate the need for a retrial. This holding brings into play the rule described in *Lindsey* v. *Meyer* (1981) 125 Cal.App.3d 536, 541 [178 Cal.Rptr. 1]: "Simply stated the doctrine of the 'law of the case' requires that both trial and reviewing courts follow principles laid down upon a former appeal in the same case, whether those earlier pronouncements are right or wrong. (*Estate of Baird* (1924) 193 Cal. 255 [223 P. 974]; *Hard* v. *Hollywood Turf Club* (1955) 134 Cal.App.2d 174 [285 P.2d 321].) For application of this doctrine the rule relied upon must have been necessary to the earlier decision. (*Estate of Roulac* (1977) 68 Cal.App.3d 1026, 1031 [136 Cal.Rptr. 492].) [¶] The foregoing general rule is, however, subject to an important exception: Where the particular point was essential to the decision, and the appellate judgment could not have issued without its determination, a necessary conclusion is that the point was *impliedly* decided, even though the point was not raised by counsel or expressly mentioned. (*Davis* v. *Edmonds* (1933) 218 Cal. 355, 358 [23 P.2d 289]; *Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 642 [160 P.2d 804]; *Nevcal Enterprises* v. *Cal-Neva Lodge, Inc.* (1963) 217 Cal.App.2d 799, 804 [32 Cal.Rptr. 106]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 649, pp. 4566-4568.)" (Italics added.)

We impliedly, at least, decided that the rescission alternative, using a date of February 9, 1974, for calculating taxes and interest, would be an equitable solution - otherwise we could not have given Burns the right to elect this solution.

■ As stated earlier, Burns contended she was entitled to introduce evidence upon remand. However, the specific evidence related to the date that Burns gained possession of the property. We were, of course, aware that Burns did not have sole possession of the property until well after February 9,1974. Eldridge's suit, filed after that date, sought to enjoin sale of the property under the deed of trust and Eldridge was not in default on his principal payments until March 15, 1974. (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 438.) Thus, the question of possession was clearly not considered the relevant factor in setting the cutoff date. Our resolution thus, by strong implication, impliedly supports the trial court's conclusion that the offer of proof was not relevant to the rescission solution.

■ Another Burns contention is more substantial. Our decision gave appellant Burns the *option* of electing the rescission solution. She was not *required* to adopt it. However the trial court allowed Burns to introduce evidence concerning her legal expenses in evicting the occupants of the property and deducted this cost from the amount owed to Eldridge. Clearly, the trial court did not feel bound to follow our opinion in every detail. In refusing to allow evidence on *possession*, it merely followed the

implied holding discussed in the preceding paragraph. Moreover, in granting Burns the option to elect rescission, the appellate court was providing her with an opportunity to escape a *more costly* solution—division of the proceeds of the sale of the property between the parties. We stated that: "It is assumed that if the 359/600 would produce a surplus over the balance due under the deed of trust, the seller would elect the first alternative, and only elect this alternative so that both buyer and seller would share the loss from depreciation in the market value of the property. Otherwise, under ordinary principles of real property security the surplus would go to the buyer." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 439.)

The sale of the property did produce a surplus and thus the first alternative of rescission, even with the February 9, 1974, cutoff date, was a more favorable solution to Burns than the resale solution. Thus, Burns' right to elect the alternative was effectively a benefit to her, not an implied concession that the rescission option was inequitable.

We conclude that the law of the case supports the trial court's decision. Accordingly, both Burns' challenge to the award's interest provisions and Eldridge's cross-appeal concerning the interest on the note are also invalid.

E) Other Issues

Eldridge has cross-appealed on two grounds. First, he argues that because Burns did not elect the rescission alternative as provided in our opinion, it was in effect waived. Nothing in our prior decision supports this argument. We did not suggest that the trial court's discretion would be limited if Burns failed to make the election.

Eldridge also contests the calculation of his award under the rescission/ restitution theory. First, he challenges the subtraction of $39,875, representing interest accrued on the promissory note through February 9, 1974. The trial court apparently based this award on the statement in our opinion that the rescission theory required the seller "to pay the $725,000, as so reduced by the total amount of the taxes and assessments and *interest due* as of February 9, 1974, together with interest on the balance from that date . . . ." (*Eldridge* v. *Burns, supra,* 76 Cal.App.3d, at p. 439, italics added.)

Eldridge contends that the word interest in this formula referred to interest on the taxes and assessments. However, the use of the phrase "interest due on February 9, 1974," obviously means that interest stopped running that day. Moreover, we did not link the interest to the taxes and assessments—it is a separate element in the equation. This is logical since

unpaid interest accrued on Eldridge's note through the date of rescission should be accounted for if rescission is to be equitable to both parties.

Eldridge also challenges the subtraction of Burns' costs of evicting the occupants of the land. Eldridge claims that this was a cost of ownership incurred after the date of rescission and hence chargeable to the owner only. However, the trial court obviously felt that equity required these expenses to be charged to Eldridge since the occupants came on the property while Eldridge had possession of it. The expenses were akin to damage inflicted by a tenant. Eldridge cites no authority suggesting that the trial court's approach was an improper exercise of its equitable discretion. Our previous opinion did not address this issue.

In sum, the trial court followed our directions and neither violated due process nor abused its discretion.

The judgment is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.

A petition for a rehearing was denied November 24, 1982, and the petition of defendant and appellant for a hearing by the Supreme Court was denied December 29, 1982.