[No. S005008. Nov. 17, 1988.]

JOHN D. WILLIAMS, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, Dorothy Berry and Arthur B. Walsh, Deputy City Attorneys, for Defendants and Appellants.

Mary Ann Healy, Michael P. Stone and Stone & Healy for Plaintiff and Respondent.

Cecil Marr, Diane Marchant, Marr & Marchant, Richard A. Shinee, Helen L. Schwab, Green & Shinee, Stephen H. Silver, Susan Silver, Silver, Kreisler, Goldwasser & Shaeffer and Lawrence J. Friedman as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

ARGUELLES, J.—In *Lybarger* v. *City of Los Angeles* (1985) 40 Cal.3d 822 [221 Cal.Rptr. 529, 710 P.2d 329] (hereafter *Lybarger*), we annulled an

administrative decision discharging a police officer for insubordination when he refused to answer questions during an internal police department investigation of misconduct. We based our ruling on the fact that the officer had not been properly advised of his rights in accordance with the Public Safety Officers Procedural Bill of Rights Act (the act) (Gov. Code, § 3300 et seq.).[1] We now consider whether that officer's partner, who also was not properly advised of his rights but who chose to answer the questions put to him and was discharged on the basis of the information he provided, is similarly entitled to reinstatement and whether his statements should be excluded from any further administrative disciplinary proceedings. The Court of Appeal so held, reasoning that the trial court had not abused its discretion in fashioning that remedy to redress the instant violation of the act and to deter future violations. We disagree, and reverse. Although we acknowledge the importance of the rights conferred by the act and the need to secure compliance with those provisions, we conclude that the trial court abused its discretion in compelling the officer's reinstatement, for in the circumstances of this case, the officer was not prejudiced by the failure to advise him properly and reinstatement is not an appropriate remedy for the wrong.

## FACTS

Officer John Williams was a member of the 77th Street Vice Unit of the Los Angeles Police Department, and a partner of Officer Michael Lybarger. In March 1980, as part of an internal investigation into the unit's manner of making arrests for bookmaking, Williams was interrogated by the department's internal affairs division, as were Officer Lybarger and other members of the unit. Officer Lybarger refused to answer any questions and was discharged for insubordination. Williams, however, cooperated with the investigators and answered the questions put to him.

The investigation ultimately revealed that the officers typically arranged their arrests in advance with bookmakers, who cooperated with the officers in return for a promise of immunity from arrest for a subsequent period. In brief, the officers would advise a bookie when they needed to make an arrest at his location. A time for the arrest would be set, and the bookie would arrange—through payment or deceit—for someone with no prior bookmaking arrests to be present at the prearranged time. The person arrested, having a clean record, would not be punished as heavily as the actual bookmaker would have been, and the officers would agree to allow the bookie to operate unmolested for a few months. No monetary or other reward was given to the officers, but they were able by this scheme to

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

maintain a high rate of arrests despite the precautions bookmakers normally take, as the bookie would also cooperate in preserving incriminating evidence.

In the fall of 1980, Williams was temporarily relieved of duty pending a hearing before a disciplinary board. He was found guilty on 27 charges of misconduct, including the improper arrest and imprisonment of 13 individuals, and was dismissed from the police force effective November 3, 1980.

Following his discharge, Williams filed a petition for writ of mandate in superior court seeking his reinstatement on the grounds that he was not timely given a "letter of transmittal" concerning the charges against him (see *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]) and that the evidence presented to the disciplinary board was insufficient. In 1986, following our decision in *Lybarger, supra,* 40 Cal.3d 822, he amended his petition to state as a further ground the failure of the internal affairs investigators to advise him of his rights under the act, as specified in that decision.

The superior court granted the petition and ordered Williams reinstated. While it permitted further disciplinary action to be taken against him, it directed that the statements he made to the investigators in 1980 be excluded from such proceedings as a remedy for the violation of the act and as a means of deterring future violations. The Court of Appeal affirmed, and we granted review to determine the propriety of these remedies for the deprivation of the statutory rights conferred on Williams by the act.

### Discussion

The issues in this case arise entirely from the manner in which the internal affairs investigators conducted the interrogation of Williams, prior to and without the benefit of our decision in *Lybarger, supra,* 40 Cal.3d 822, in which we addressed two separate, but interrelated, points. The second is the more germane to our inquiry here, but the first also bears on our task.

■ We first held that there was neither a constitutional nor a statutory bar to the imposition of administrative sanctions on a police officer for refusing to answer questions posed in an internal investigation. "As a matter of constitutional law, it is well established that a public employee has no absolute right to refuse to answer potentially incriminating questions posed by his employer. Instead, his self-incrimination rights are deemed adequately protected by precluding any use of his statements at a subsequent criminal proceeding. (See *Lefkowitz* v. *Turley* (1973) 414 U.S. 70, 77-79 [38 L.Ed.2d 274, 281, 283, 94 S.Ct. 316]; *Garrity* v. *New Jersey* (1967) 385 U.S.

493, 500 [17 L.Ed.2d 562, 567, 87 S.Ct. 616].) [¶] Similarly, [Officer Lybarger] had no statutory right to remain silent. Section 3303, subdivision (e), expressly provides that an officer who refuses to respond to questions or submit to interrogation is subject to punitive action by his employer." (*Lybarger, supra,* 40 Cal.3d at p. 827.)[2]

■ We determined, however, that the officer must be advised of the qualified nature of his right to remain silent before administrative sanctions, such as dismissal for insubordination, could be invoked. Section 3303, subdivision (g) provides: "If prior to or during the interrogation of a public safety officer it is deemed that he may be charged with a criminal offense, he shall be immediately informed of his constitutional rights." We determined that, in the context of an administrative inquiry into possible criminal misconduct, the officer's "constitutional rights" consisted of the basic *Miranda* rights (see *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), as modified by the principles of *Lefkowitz* v. *Turley, supra,* 414 U.S. at pages 77-79 [38 L.Ed.2d at pages 281-283], and *Garrity* v. *New Jersey, supra,* 385 U.S. at page 500 [17 L.Ed.2d at page 567]. "In other words, [Officer Lybarger] should have been told, among other things, that although he had the right to remain silent and not incriminate himself, (1) his silence could be deemed insubordination, leading to administrative discipline, and (2) any statement made under the compulsion of the threat of such discipline could not be used against him in any subsequent criminal proceeding. [Citations.]" (*Lybarger, supra,* 40 Cal.3d at p. 829.)[3]

We noted that Officer Lybarger was properly informed of the consequences of remaining silent, but was not told that any statements he made could not be used against him in subsequent criminal proceedings, and we found the omission critical. "[H]ad [he] understood that his statements during the administrative interview could not be used against him in a criminal proceeding, he might well have elected to cooperate rather than remain silent." (*Lybarger, supra,* 40 Cal.3d at pp. 829-830.) That is, had he been fully advised of his rights, he might have chosen to answer the investi-

---

[2] Section 3303, subdivision (e) provides, in pertinent part: "The public safety officer under interrogation shall not be subjected to offensive language or threatened with punitive action, except that an officer refusing to respond to questions or submit to interrogations shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action."

[3] In this context, it is thus something of a misnomer to speak of giving the officer his "*Miranda* rights"—which normally include not only the right to the presence and assistance of counsel, but also the right to remain silent and the admonition that any statements made can be used against the speaker in a court of law (see *People* v. *Pettingill* (1978) 21 Cal.3d 231, 235, fn. 2 [145 Cal.Rptr. 861, 578 P.2d 108])—for the officer in fact does not have the right to remain silent free of all sanctions, and, if he speaks, his statements *cannot* be used against him in a criminal action. (*Lybarger, supra,* 40 Cal.3d at pp. 828-829.)

gators' questions; in that he chose not to speak, it was possible to entertain the belief that had he spoken he might have exonerated himself or otherwise explained his conduct in a way that would have led to a decision not to dismiss him from the police force.

The same cannot be said of Williams. It is uncontested that his rights were violated; like Officer Lybarger, Williams was warned only that a refusal to answer the investigators' questions would subject him to discipline and lead to his dismissal and "was never told of the extent of the protection afforded to any statements he might make." (40 Cal.3d at p. 829.) But unlike Officer Lybarger, who remained silent and was discharged for insubordination, Williams answered the investigators' questions and admitted his role in the staged arrests. And because of the nature of the flaw in the warnings Williams was given, he could not have been prejudiced by the failure to advise him properly; put another way, it cannot be said of Williams that there is any possibility his case could have ended differently even had he been fully advised of his rights. As we have seen, the investigators erred only in failing to tell Williams that any statements he gave them could not be used in a criminal proceeding. That additional warning, had it been given, could only have provided Williams with an additional incentive to speak to the investigators and could not reasonably have provided any reason for him not to speak to them. Because Williams answered the investigators' questions, the absence of a complete warning in his case, unlike that of Officer Lybarger, could not logically have had any causal connection with his ultimate dismissal. The point bears repeating. As to Officer Lybarger, it was possible to entertain the belief that had he been properly warned, he might have chosen a different course of conduct that might have led to a decision not to dismiss him from the police force; as to Williams, it is not.

What then is the consequence of this? The Court of Appeal properly recognized that reinstatement was not necessary to make Williams whole, at least in the customary sense, for the violation of his rights. We would also note that reinstatement was not necessary to further the legislative goal of encouraging employee cooperation within protective guidelines (see §§ 3301, 3303), for that goal was in fact served by Williams's voluntary cooperation. The Court of Appeal concluded, however, that the trial court was not limited in its choice of remedies to those capable of curing the harm actually suffered by an individual officer, but had broad discretion under the act to fashion an appropriate equitable remedy. We can accept this general proposition, but not the means chosen to implement it here.

Section 3309.5, subdivision (c) provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other

extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." ■■■ The Court of Appeal accordingly concluded that the trial court had discretion to fashion an appropriate remedy *and* that it did not abuse that discretion in determining here that nullification of Williams's interrogation—by precluding any use of his statements in a disciplinary proceeding and ordering him reinstated as a means of giving that sanction practical effect—was an appropriate way "to remedy the violation and to prevent future violations of a like or similar nature . . . ." We cannot agree.

We are first urged by the City of Los Angeles (City) to rule broadly here that the exclusionary rule does not apply in police disciplinary proceedings. (Cf. *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 226-230 [113 Cal.Rptr. 175, 520 P.2d 991].) We decline to do so. This case does not involve an attempt to utilize evidence obtained in violation of constitutional constraints. (See *Lefkowitz* v. *Turley, supra,* 414 U.S. at pp. 77-79 [38 L.Ed.2d at pp. 281-283]; *Garrity* v. *New Jersey, supra,* 385 U.S. at p. 500 [17 L.Ed.2d at p. 567].) That Williams was not properly advised by the investigators constituted only a denial of the additional statutory protections conferred by the act. (See *Lybarger, supra,* 40 Cal.3d at p. 828.) We thus have no cause to consider whether the exclusionary rule should apply to bar consideration at a police disciplinary hearing of evidence obtained by unconstitutional methods. (Compare *Governing Board* v. *Metcalf* (1974) 36 Cal.App.3d 546 [111 Cal.Rptr. 724] [exclusionary rule not applicable in proceeding to discharge teacher for immoral conduct] with *Sullivan* v. *District Court of Hampshire* (1981) 384 Mass. 736 [429 N.E.2d 335] [illegally obtained evidence may not be used in proceeding to discharge public employee] and *City of New Brunswick* v. *Speights* (1978) 157 N.J.Super. 9 [384 A.2d 225] [dictum; exclusionary rule may be applicable in proceeding to discharge police officer].)

Properly speaking, in fact, we are not concerned here with the applicability of the exclusionary rule, but only with the appropriateness of a ban on the use of a particular piece of evidence. We are again urged by the City to rule broadly; specifically, that evidence may *never* be excluded from consideration as a remedy for a violation of the act. We decline this invitation as well.

The argument rests largely on two propositions: first, that a statutory violation cannot justify the suppression of evidence if the statute itself does not provide for that remedy (see, e.g., *People* v. *Rawlings* (1974) 42 Cal.App.3d 952, 956 [117 Cal.Rptr. 651]; *People* v. *Brannon* (1973) 32

Cal.App.3d 971, 975 [108 Cal.Rptr. 620]); and second, that the Legislature, by expressly providing for suppression for certain violations (see § 3307 [refusal to take polygraph examination]; *Estes* v. *City of Grover City* (1978) 82 Cal.App.3d 509, 516 [147 Cal.Rptr. 131]), must, under the principle of *exressio unius est exclusio alterius,* have intended that it not be the remedy for others. (Cf. *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) We are not persuaded that either of these propositions leads to a proper interpretation of the act.

As originally enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1202), the act contained no specific enforcement mechanism for violations, apart from that previously noted with respect to an officer's right to refuse to submit to a polygraph examination. (See § 3307.) In 1979, however, the act was amended (Stats. 1979, ch. 405, § 1, p. 1493) to add section 3309.5, which, in its present form: (1) declares that "[i]t shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed . . . by [the act]" (§ 3309.5, subd. (a)); (2) confers jurisdiction on the superior courts to entertain actions by officers for violations of the act (§ 3309.5, subd. (b)); and (3) as noted previously, grants the courts broad discretion to fashion appropriate equitable remedies to redress such violations and deter future ones (§ 3309.5, subd. (c)).

■ The legislative history of section 3309.5 establishes, first, that the Legislature recognized that the act as originally adopted failed to specify any procedure by which an aggrieved officer could enforce the rights granted and, second, that by enacting section 3309.5, the Legislature intended to allow such officers "immediate access to superior court to enforce their rights under the Act . . . ." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1807 (1979-1980 Reg. Sess.) as amended May 17, 1979.) We think it plain that the Legislature, in lieu of attempting to specify particular remedies for particular violations, determined that the task was best left to the courts on a case-by-case basis. We thus see no basis for a complete ban on exclusion of evidence as a remedy.[4]

■ The question remains, however, whether reinstating Williams and excluding his statements from consideration at any further disciplinary

---

[4] Indeed, certain violations of the act might be well suited to such an approach. For example, section 3305 provides that no adverse comments may be placed in an officer's personnel file unless the officer is first given the opportunity to read the document, and section 3306 gives the officer the right to submit a written response to be attached to the adverse comment. Violation of these rights might well warrant the exclusion of such evidence from a disciplinary hearing. (Cf. *Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703, 713 [157 Cal.Rptr. 72, 597 P.2d 475].) Similarly, exclusion of evidence might be appropriate for a violation of section 3309, which provides that an officer's locker may not be searched without a warrant except in the officer's presence or with the officer's consent.

hearings was an appropriate remedy here for the original failure to give him the advice required by *Lybarger, supra,* 40 Cal.3d 822. The Court of Appeal found no abuse of discretion in the trial court's choice of this remedy, on the ground that it was "[t]he remedy most certain to deter such unlawful behavior in the future . . . ." As we shall explain, we are not convinced that the remedy in fact has any deterrent value in these circumstances, and we think the focus on deterrence alone too limited and misleading. Although we agree with the Court of Appeal that a trial court has broad discretion in fashioning a remedy for a violation of the act, the relief rendered must be "appropriate" (§ 3309.5, subd. (c)), and we cannot agree that the order in this case meets that standard. We are thus compelled to conclude that the trial court abused its discretion in ordering Williams reinstated and precluding all use of his statements.

■ "Where, as here, a trial court has discretionary power to decide an issue, its decision will be reversed only if there has been a prejudicial abuse of discretion. ' "To be entitled to relief on appeal . . . it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . ." ' [Citation.] However, 'discretion may not be exercised whimsically and, accordingly, reversal is appropriate "where no reasonable basis for the action is shown." [Citation.]' [Citations.]" (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].)

■ We perceive no "reasonable basis" for the trial court's decision in this case. First, we see no appropriate deterrent value in precluding use of Williams's statement, as that ban could not provide any additional incentive to police departments to advise officers of the rights specified in *Lybarger, supra,* 40 Cal.3d at page 822. To the contrary, that incentive already exists in full force, for if the officer is not advised of those rights and remains silent, as did Officer Lybarger, the officer *cannot* be discharged for insubordination. We see no basis for speculating that a police department would run that risk, for the prospect that the officer would choose to answer questions posed by an investigator can only be enhanced by advising the officer of his *Lybarger* rights. And we think the consequences of precluding use of Williams's statements too extreme, for as the Court of Appeal noted, Officer Williams could be immediately subjected to new disciplinary proceedings, given the required advice, and put to exactly the same choices he had before: to answer and be discharged for misconduct, to remain silent and be discharged for insubordination, or to resign. We see no purpose to a disposition that would merely have the parties come full circle and end up where they began. The only practical effect of the trial court's order is to fully reinstate Williams with backpay for all the intervening years. (See *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556

P.2d 306].) We cannot conceive that such a result serves any rational purpose.[5]

We also think the order precluding use of Williams's statements, which necessitated his reinstatement if the order was to have any practical effect, is inconsistent with those decisions addressing the situation of a public employee allegedly discharged both because of dissatisfaction with his performance and because of his exercise of constitutional rights. ■ In such cases, the courts apply a "but for" test, and reinstatement is not mandated if the employer can demonstrate that it would have reached the same decision even had the employee not engaged in protected conduct. (See, e.g., *Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 283-287 [50 L.Ed.2d 471, 481-484, 97 S.Ct. 568]; *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 592-594 [100 Cal.Rptr. 16, 493 P.2d 480]; *Allen* v. *Scribner* (9th Cir. 1987) 812 F.2d 426, 433, opn. mod. 828 F.2d 1445.) We recognize that this principle is not strictly applicable here, as our focus is on the employer's denial of rights to which the employee was entitled as opposed to the employee's exercise of protected rights, but we have applied this test previously in considering how to remedy a denial of statutory rights in a public employee disciplinary proceeding (see *Miller* v. *Chico Unified School Dist., supra,* 24 Cal.3d at p. 715), and we think the underlying rationale apposite here as well. "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." (*Mt. Healthy City Board of Ed.* v. *Doyle, supra,* 429 U.S. at pp. 285-286 [50 L.Ed.2d at p. 483].) ■ We similarly think the principles involved in the case before us are sufficiently vindicated if Williams is placed in no worse position than if the investigators had fully advised him of his rights in the first place.

The prohibition against any use of Williams's statements was not required to ensure that he was not prejudiced individually by the failure to advise him of his rights. Nor did that ban measurably increase the incentive to comply with the act beyond what is inherent in our decision in *Lybarger, supra,* 40 Cal.3d 822, and the marginal increase in deterrence conceivably afforded by the trial court's order is so out of scale with its consequences that we cannot find it to have been "appropriate" within the meaning of section 3309.5, subdivision (c).

Our decision should not be read to denigrate the value of the protections afforded by the act or to suggest that the act confers rights for whose

---

[5] We note that Williams also contends he is entitled to backpay for a violation of his *Skelly* rights. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194.) In light of its disposition of his claims under the act, the Court of Appeal did not reach this question. We decline to address it in the first instance, and instead leave the issue to be resolved on remand.

violation there is no effective remedy. Upon an adequate showing, injunctive or other extraordinary relief, enforceable by the court's contempt powers, may issue to remedy a particular violation or to prevent future violations. Mere speculation that the act might be violated in the future, however, cannot suffice. As no showing was made to warrant the relief awarded here, we conclude that the trial court abused its discretion in ordering Williams reinstated and precluding all use of his statements.

## CONCLUSION

The judgment of the Court of Appeal affirming the trial court's issuance of a writ of mandate is reversed, and the matter is remanded for further proceedings consistent with the views expressed in this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Kaufman, J., and Eagleson, J., concurred.