[No. B031051. Second Dist., Div. One. June 30, 1989.]

JOHN J. HANNA, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

364

COUNSEL

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney and S. David Hotchkiss, Deputy City Attorney, for Defendants and Appellants.

Marr & Marchant, Cecil Marr and Diane Marchant for Plaintiff and Respondent.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Appellants City of Los Angeles (city) and its Chief of Police Daryl Gates (Gates) appeal from a judgment in favor of respondent John J. Hanna (Hanna). The judgment was entered on remand following a prior opinion of this court. (*Hanna* v. *City of Los Angeles* (Mar. 23, 1987) B016427 [nonpub. opn.] (*Hanna* II).)

### STATEMENT OF FACTS

As stated in the prior opinion, the underlying facts are as follows: "On August 10, 1981, Laurie Sullivan, a clerk at a 7-Eleven Store, called the

police to report that a man threatened her with a weapon in a dispute over the amount of change she gave him. As the man departed the store, Sullivan noted the license plate number of his car. Investigating officers linked this car to Hanna, a probationary police officer [with the Los Angeles Police Department] scheduled to become a tenured police officer on August 24, 1981.

"Hanna was interrogated at the police station on August 11, 1981 and again on August 14, 1981. After hearing conflicting versions of these interrogation sessions, the trial court, in findings supported by substantial evidence, concluded that Hanna invoked his right to remain silent after being advised of his *Miranda* [*Miranda* v. *Arizona* (1966) 384 U.S. 436 (16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)] rights; that Hanna's request to be represented by a member of the [Los Angeles Police Protective] League was denied; that Hanna was not given access to a tape recording of his first interrogation prior to his second interrogation; that Hanna was not supplied with copies of Sullivan's complaint or the investigating officers' reports; that Hanna admitted removing his weapon at the 7-Eleven Store but denied brandishing the weapon in a menacing or threatening manner; and that Hanna neither admitted nor failed to deny telling Sullivan that he would have to kill her if she gave him incorrect change.

"On August 19, 1981, Hanna was presented with a notice of probationary termination. This notice, which indicated that no right of appeal existed, charged the following acts of misconduct: 'Count 1. On August 10, 1981, at approximately 0115 hours, at 11656 Wilshire Boulevard, West Los Angeles, while off-duty, you displayed a revolver in a rude and threatening manner to Laurie Sullivan. [¶] Count 2. On August 10, 1981, at approximately 0115 hours, at 11656 Wilshire Boulevard, West Los Angeles, while off-duty, you directed improper remarks to Laurie Sullivan when you stated, "You better be right or I'll have to kill you." ' " (*Hanna* II, *supra.*)

PROCEDURAL BACKGROUND

The procedural background to the time of the prior appeal, as stated in the prior opinion, is as follows: "On September 24, 1981, Hanna filed a petition for a writ of mandate pursuant to Code of Civil Procedure section 1085. Los Angeles Superior Court Judge Dickran Tevrizian denied the petition on April 26, 1982. On November 25, 1983, in an unpublished decision, Division Five of this court reversed the trial court's decision and remanded the cause for the trial court to issue an appropriate statement of decision. (*Hanna* v. *City of Los Angeles* (Nov. 25, 1983) 2 Civ. No. 68039 [nonpub. opn.] (*Hanna* I).)

"An evidentiary hearing was conducted before Judge Robert Fainer on May 17, 1985. The trial court issued its statement of decision on August 7, 1985, and filed a judgment granting Hanna's petition for a writ of mandate on September 4, 1985." (*Hanna* II, *supra*.) The city and Gates were ordered to suppress any statements made by Hanna after he asserted his right to remain silent at the interrogations, in any administrative or other proceedings, and to reinstate him if he requested it and reimburse him for all back pay less his earnings as a police officer with the Culver City Police Department since his discharge.

The city and Gates appealed, first contending the trial court erred in ordering the suppression of evidence at an administrative hearing. The court noted the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) (Act) imposes certain limitations on the interrogation of public safety officers accused of misconduct. (*Hanna* II, *supra*.) Government Code section 3303 provides in pertinent part, when a public safety officer is under investigation and subjected to interrogation which could lead to a punitive action, the officer must be informed of the nature of the investigation prior to any interrogation (subd. (c)); the officer may not be threatened with punitive action except that an officer refusing to respond to questions or submit to interrogation shall be informed such refusal may result in punitive action (subd. (e)); the interrogation may be recorded and, if it is, the officer shall have access to the tape prior to any further interrogation (subd. (f)); if prior to or during the interrogation it is deemed the officer may be charged with a criminal offense, the officer shall immediately be informed of his constitutional rights (subd. (g)); and if a formal written statement of charges is filed, or the interrogation focuses on matters likely to result in punitive action against the officer, the officer shall on request have the right to be represented by a representative of his choice during interrogation (subd. (h)). Section 3304, subdivision (a) provides the officer shall not be subjected to punitive action for lawfully exercising such rights.

The trial court found Hanna was subjected to such interrogation, asserted his right to remain silent, but was threatened with loss of employment if he did not respond to questioning or submit to interrogation. The trial court interpreted Government Code sections 3303 and 3304 to mean once a public safety officer invokes his right to remain silent during interrogation, further interrogation violates the purpose and legislative intent of the Act; in order to give effect to the purpose and intent of the Act, any statements obtained as a result of interrogation once the right to silence has been invoked must be held inadmissible in any administrative proceeding to punish the officer. Thus, Hanna's statements after he exercised his right to remain silent had to be suppressed in any subsequent administrative proceeding to punish him. (*Hanna* II, *supra*.)

This court disagreed, based on *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822 [221 Cal.Rptr. 529, 710 P.2d 329]. *Lybarger* holds the officer has "neither a constitutional nor a statutory right to remain silent free of administrative sanction. As a matter of constitutional law, it is well established that a public employee has no absolute right to refuse to answer potentially incriminating questions posed by his employer. Instead, his self-incrimination rights are deemed adequately protected by precluding any use of his statements at a subsequent criminal proceeding. [Citations.] [¶] Similarly, [the officer has] no statutory right to remain silent. Section 3303, subdivision (e), expressly provides that an officer who refuses to respond to questions or submit to interrogation is subject to punitive action by his employer." (At pp. 827-828; *Hanna* II, *supra*.)

*Hanna* II concluded the trial court's judgment was erroneous to the extent it was based on Hanna's purported right to refuse to answer questions regarding his alleged misconduct. While there were violations of the Act, the court could not determine from the record whether the trial court would have ordered suppression of Hanna's statements based solely on these violations; it was therefore appropriate to remand the case to the trial court "for the limited purpose of determining whether the violations of the Act warrant the suppression of evidence." (*Hanna* II, *supra*.)

The city and Gates next contended the trial court erred in ordering that section 202 of the Charter of the City of Los Angeles be utilized at the administrative hearing. (*Hanna* II, *supra*.) The trial court determined Hanna was entitled to a "liberty interest" hearing (*Lubey v. City and County of San Francisco* (1979) 98 Cal.App.3d 340, 346 [159 Cal.Rptr. 440]) which would satisfy both due process and Government Code section 3304, subdivision (b), which precludes punitive action without an opportunity for administrative appeal. (*Hanna* II, *supra*.) It concluded the administrative hearing must utilize section 202, based in part on *Mortimer v. City of Los Angeles* (Sept. 14, 1984) 2d Civ. No. 67313 (nonpub. opn.). (*Hanna* II, *supra*.) *Mortimer* held, in pertinent part, until the city "adopts a specific, separate procedure for probationary employees in 'liberty interest' cases which meets due process standards, the provisions of present City Charter section 202 apply in such cases." (*Mortimer, supra*.)

The city and Gates submitted what purported to be the current procedure utilized for liberty interest hearings for probationary police officers. (*Hanna* II, *supra*.) This court remanded for a determination "whether the new procedure satisfies due process standards and whether the new procedure should be utilized for Hanna's liberty interest hearing."

Finally, the city and Gates contended the trial court erred in awarding attorney's fees pursuant to Code of Civil Procedure section 1021.5, which

allows an award of attorney's fees under certain conditions "in any action which has resulted in the enforcement of an important right affecting the public interest." (*Hanna* II, *supra*.) This court held the trial court's factual determination whether Hanna was entitled to a liberty interest hearing did not warrant an award of attorney's fees. (*Hanna* II, *supra*.) However, the case also involved violations of the Act and was being remanded for the trial court to fashion an appropriate remedy for violations of the Act. (*Hanna* II, *supra*.) "Depending on the trial court's decision, this case may confer a significant benefit on a large class of persons (i.e., the remedies available to other police officers in cases where the Act is violated) warranting an award of attorneys' fees." (*Hanna* II, *supra*.) Thus, the case also was remanded for a determination whether it still warranted an award of attorney's fees. (*Hanna* II, *supra*.) Except for the three areas in which the trial court's decision was reversed and remanded, the decision was affirmed.

After the case was remanded, the city and Gates petitioned the trial court to augment the record with the testimony of Sergeant William Morgan. They claimed Sergeant Morgan was Hanna's representative at the interrogations and his testimony was necessary to determine whether violations of the Act occurred and the nature and extent of any violations. The trial court denied the petition.

The parties then submitted papers on the issues before the trial court on remand and a hearing was held. The trial court rendered judgment in favor of Hanna. It ordered a peremptory writ of mandate issued, directing the city and Gates to set aside their decision discharging Hanna, to hold an administrative hearing pursuant to section 202 of the Los Angeles City Charter to determine whether his discharge was warranted, to suppress evidence of any statements made by him during his interrogations at the hearing, to reinstate him as a probationary police officer if he requests it, to reimburse him for back pay, and to pay attorney's fees to the Los Angeles Police Protective League.

CONTENTIONS

I

Appellants contend the trial court abused its discretion in ordering the evidence suppressed.

II

Appellants further contend the trial court erred in refusing their request to augment the trial court record.

## III

Appellants assert the order of reinstatement and back pay is inconsistent with respondent's probationary status and section 202 of the Los Angeles City Charter.

## IV

Finally, appellants contend respondent is not entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5.

### DISCUSSION

## I

Appellants contend the trial court abused its discretion in ordering the evidence suppressed. We disagree.

In its statement of decision, the trial court adopted its previous findings "'that the internal affairs interrogation violated § 3303 of the Act in the following ways: (1) [respondent] was not permitted the presence of a representative of his choice at the interrogation in violation of § 3303(h); (2) [respondent] was not afforded access to the tape recording of his first interrogation prior to his second interrogation by internal affairs, in violation of § 3303(f); and (3) during his interrogation, [respondent] was not provided with copies of the store clerk's complaint or the reports prepared by the police officers who initially investigated the complaint, in violation of Government Code § 3303(f)'.'"

Additionally, the trial court found appellants "were aware that [respondent], a probationary employee, was shortly to achieve the status and benefits of a tenured employee. [Appellants] were more concerned with preventing this occurrence than they were in observing [respondent's] rights. As a result, [respondent] was denied procedural protections at a critical stage." Further, "'"A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors."'" (Quoting from *Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 567 [150 Cal.Rptr. 129, 586 P.2d 162].) "Thus," the court concluded, "suppression of the statements and responses made by [respondent] at his interrogations is an appropriate remedy."

Appellants rely on *Williams* v. *City of Los Angeles* (1988) 47 Cal.3d 195 [252 Cal.Rptr. 817, 763 P.2d 480] to support their contention the trial court abused its discretion in ordering the statements suppressed. In *Williams,* plaintiff was a police officer with the Los Angeles Police Department who was interrogated by the internal affairs division regarding his manner of making arrests for bookmaking; plaintiff cooperated with the investigators and revealed his misconduct in the manner of making arrests. Plaintiff was temporarily relieved of duty pending a hearing before the disciplinary board; following the hearing, he was found guilty of misconduct and dismissed. He petitioned for writ of mandate seeking reinstatement due to violations of the Act. The trial court granted the petition and ordered him reinstated; it permitted further disciplinary action against him but required exclusion of statements he made to investigators as a remedy for violating the Act and to deter future violations. (At pp. 198-199.)

The issue before the court was the propriety of those remedies. The court first reviewed *Lybarger* v. *City of Los Angeles, supra,* 40 Cal.3d 822, which involved the same investigation. Officer Lybarger was not informed his statements could not be used against him in subsequent criminal proceedings and he refused to cooperate with investigating officers, was found guilty of insubordination after an administrative hearing and was terminated. *(Id.,* at pp. 825-826.) Had he understood his statements could not be used against him in subsequent criminal proceedings, he might have cooperated and possibly exonerated himself or explained his conduct in such a way that he would not have been terminated. *(Williams, supra,* 47 Cal.3d at pp. 200-201.)

The same could not be said for plaintiff, however, who answered the investigators' questions and admitted his role in the misconduct. (47 Cal.3d at p. 201.) Had he been told of his rights, i.e., the protection given to his statements, there was no possibility the outcome would have been any different, that he would have refused to speak to the investigators. *(Ibid.)*

The court then examined the result of this situation; reinstatement was not necessary to make plaintiff whole or to further the legislative goal of encouraging employee cooperation within the protective guidelines. (47 Cal.3d at p. 201.) However, Government Code section 3309.5, subdivision (c), gave the trial court discretion to fashion an appropriate remedy for plaintiff. *(Williams, supra,* 47 Cal.3d at pp. 201-202.) The question was whether the trial court abused its discretion in excluding from any disciplinary hearing the statements made by plaintiff during his interrogation and ordering him reinstated to give the sanction a practical effect. *(Id.,* at p. 202.)

Defendant asked the court to decide the exclusionary rule could not apply to police disciplinary proceedings, and that evidence may never be

excluded from consideration as a remedy for violation of the Act, but the court declined to do this. (47 Cal.3d at p. 202.) Rather, it focused on whether the remedy fashioned by the trial court was appropriate and whether there was a reasonable basis for the trial court's exercise of discretion. (*Id.,* at pp. 203-204.) The court concluded the remedy was not appropriate, there was no reasonable basis for it and the trial court abused its discretion in ordering it. (*Id.,* at p. 204.)

For one thing, a ban on the use of such statements could not provide additional incentive for officers to be advised of their rights properly; incentive already exists since the failure to advise means the officer not answering cannot be discharged for insubordination, as decided by *Lybarger.* (*Williams, supra,* 47 Cal.3d at p. 204.) Plus, the consequences of excluding plaintiff's statements would be too extreme. (*Ibid.*) He would be subjected to new disciplinary proceedings, given the required advice and the same choice whether to be discharged for misconduct or to remain silent and be discharged for insubordination; he would come full circle with the only practical effect of the trial court's order to reinstate him with back pay for the intervening years. (*Ibid.*)

The court also concluded the trial court's order excluding the statements was inconsistent with the "but for" test, that reinstatement was not mandated if plaintiff is placed in no worse position than if the investigators had fully advised him of his rights. (47 Cal.3d at p. 205.) Thus, the trial court's order was so out of scale with its consequences that it was not appropriate under Government Code section 3309.5, subdivision (c). (*Ibid.*)

While the *Williams* court found on the facts before it exclusion of the statements was an abuse of discretion, it declined to hold exclusion of such statements would never be an appropriate remedy. (47 Cal.3d at pp. 202-203.) In a footnote, it even noted "certain violations of the act might well be suited to such an approach," citing as examples violations of Government Code sections 3305, 3306 and 3309. (*Id.,* at p. 203, fn. 4.)

Appellants contend, however, the instant case is analogous to the *Williams* case, making exclusion an inappropriate remedy. They state, "There is no evidence in the record whatsoever that [respondent's] case could have ended differently even if he had been provided with the rights the trial court found were violated, i.e., the representative of his choice, copies of his prior tape recording, copies of the investigators' notes or the store clerk's complaint." Further, "there is no evidence in the record that the respondent . . . answered the questions put to him during his interrogation any differently than he would have had there been full compliance with the Act." Additionally, they claim his reinstatement is not mandated "by the

legislative intent of the Act which is to encourage accused officers to cooperate with administrative investigations."

The record shows the trial court originally found, following its hearing after the first remand for a statement of decision, respondent "did admit removing his revolver from an ankle holster and placing it in his jacket pocket during the dispute with the store clerk because he felt threatened by patrons in the store who gathered around him during the dispute. He denie[d] brandishing the weapon in a menacing or threatening manner. The internal affairs investigators, under pressure to complete their investigation before [respondent] became a tenured officer, misconstrued [his] responses to their questions as admissions. . . . As to the alleged statement that [respondent] made to the store clerk that he might kill her, [he] never admitted this statement. The court finds that [respondent's] answers to the accusatory question that he made the statement, were evasive and equivocal but did not constitute a failure to deny."

Moreover, the "police department, apparently in a hurry to complete the investigation before August 24, 1981, when [respondent] would become a tenured officer, refused to allow [him] time to have a member of the Los Angeles Police Protective League present during the internal affairs interrogation . . . even though [he] requested such representation." Further, "[respondent's] commanding officer, after sending [him] to a Department psychologist or psychiatrist, was concerned [respondent] was suffering from emotional problems and was a high employment risk as a tenured officer. The commanding officer, in his letter report and recommendation of August 17, 1981, one week before [respondent] was to become a tenured officer, was concerned that [respondent] might be eligible for a service pension. While the commanding officer acknowledged [respondent] had been a capable, reliable probationary officer and previously had not been the subject of criticism concerning his off-duty conduct, he recommended that [respondent] be terminated before [he] became a tenured officer on August 24, 1981, even though the internal affairs investigation was not going to be completed until after that date. No evidence was offered by [appellants] that any consideration was given to the Department hierarchy's perception of [respondent's] then emotional problems. No mention was made by any executive officer of [the] Department of [respondent's] PCP contact some six months before his discharge."

Respondent was hurried through the investigation without the representation he requested, increasing the likelihood of his being " 'too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors' " (*Civil Service Assn.* v. *City and County of San Francisco, supra,* 22 Cal.3d at p. 567), such as emotional problems or

his prior contact with PCP. Thus, his statements at the interrogations may have been incomplete or inaccurate.

Additionally, there were conflicting versions of what occurred at the interrogation sessions. (*Hanna* II, *supra*.) Had respondent been provided with a representative and a copy of the tape recording of the first interrogation session, he might have been able to provide more support for his version of what took place at the sessions. His version conflicted with that of the investigators, whose version was colored by the pressure on them to complete the investigation before respondent achieved tenured status.

The foregoing illustrates the difference between the instant case and *Williams*. In *Williams,* the violation of the Act might have affected only Williams's decision whether or not to cooperate in the investigation and make a statement. Here, the violations might have affected the *content* of respondent's statements to the investigators, as well as the investigators' version of his statements. This makes suppression of the statements more appropriate here than in *Williams*.

It is possible a different outcome would have been reached had respondent been afforded the protections of the Act he was denied. Extenuating factors and respondent's past performance might have been given greater consideration if proceedings were not hurried along to ensure respondent was terminated before he became a tenured employee and eligible for a service pension. Therefore, the trial court did not abuse its discretion in ordering evidence of respondent's statements at the two interrogations suppressed at any future administrative hearings or other proceedings, in that suppression was an appropriate remedy for the type of violations of the Act which occurred here.

## II

Appellants further contend the trial court erred in refusing their request to augment the trial court record. The contention lacks merit.

Following remand, appellants petitioned the trial court to augment its record with the testimony of Sergeant William Morgan, whom they claimed served as respondent's defense representative during the two interrogations. This evidence was claimed to be necessary to show "the nature and extent of the alleged deprivations under the . . . Act to test whether a judicially created exclusionary rule should be applied under the facts of this case." The trial court denied the petition.

The trial court originally found respondent "was not permitted the presence of a representative of his choice at the interrogation in violation of

[Government Code section 3303, subdivision (h)]." Appellants did not challenge this finding on appeal. This court noted "the trial court, in findings supported by substantial evidence, concluded . . . Hanna's request to be represented by a member of the League was denied." (*Hanna* II, *supra.*) Our directions to the trial court included remand "for the limited purpose of determining whether the violations of the Act warrant the suppression of evidence"; nothing was said about determining whether the Act had been violated. (*Hanna* II, *supra.*)

■ Where there has been an appellate decision in a case, "the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void." (*Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 655 [242 P.2d 1].) ■ Since this court on the prior appeal did not direct the trial court to determine whether violations of the Act had occurred, such a determination would have been in excess of the trial court's jurisdiction on remand and void. Therefore, the trial court did not err in denying appellants' petition to augment the record with further evidence on that issue.

Additionally, appellants' contention is barred by the law of the case doctrine. ■ Under the doctrine, "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 737, p. 705; accord, *Eldridge* v. *Burns* (1982) 136 Cal.App.3d 907, 920 [186 Cal.Rptr. 784].) Ordinarily, the doctrine does not apply to points not raised by counsel on the prior appeal. (9 Witkin, *op. cit. supra,* § 753, p. 721; accord, *Olson* v. *Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720].) However, "Where the particular point was essential to the decision, and the appellate judgment could not have been rendered without its determination, a necessary conclusion in support of the judgment is that it was determined. With respect to such a point, the appellate decision is law of the case even though the point was not raised by counsel or expressly mentioned." (9 Witkin, *op. cit. supra,* § 754, p. 722, italics omitted; accord, *Olson, supra,* at p. 399.) ■ The doctrine applies to appellate determinations that the trial court's factual findings are supported by substantial evidence. (*Stamler* v. *Kissinger* (1957) 154 Cal.App.2d 239, 240-241 [315 P.2d 887]; see also *Hendershott* v. *Shipman* (1954) 124 Cal.App.2d 561, 563 [269 P.2d 113].)

■ This court in the prior appeal necessarily determined there was substantial evidence to support the trial court's finding respondent was

denied his right to a representative of his choice at the interrogations; the denial of this and other rights guaranteed under the Act was the basis for the court's remand to determine whether suppression of evidence was warranted by the violations of the Act. The court itself, in its statement of facts, noted there was substantial evidence to support the trial court's findings as to the violations of the Act. Accordingly, appellants were barred by the law of the case doctrine from raising the question whether the violations occurred on retrial following remand.

## III

■ Appellants assert the order of reinstatement and back pay is inconsistent with respondent's probationary status and section 202 of the Los Angeles City Charter. This assertion, too, is barred.

Originally, the trial court in its judgment ordered appellants "to immediately reinstate [respondent] as a probationary police officer, if he so requests it, and, in any event, reimburse [him] for all back pay" less his earnings since his discharge. Appellants did not challenge the propriety of this ruling in their prior appeal, and it was affirmed by this court. (*Hanna II, supra*.) After remand and retrial on the specified issues, the trial court again ordered respondent's reinstatement as a probationary police officer if requested and back pay less other earnings since his discharge.

The trial court further found, originally, respondent was entitled to a liberty interest hearing, thus his discharge had to be vacated and it was appropriate that he be reinstated and reimbursed with back pay. The trial court also ordered appellants to set aside their decision discharging respondent and to hold such a hearing. On appeal, this court impliedly agreed with the finding respondent was entitled to a liberty interest hearing and affirmed that part of the judgment setting aside respondent's dismissal and ordering that he be given the hearing, and ordering that he be reinstated with back pay. (*Hanna II, supra*.) It remanded for a determination as to the procedures which should apply to the hearing. (*Hanna II, supra.*)

Once again, appellants are barred from raising the question by the law of the case doctrine. By affirming the judgment ordering respondent reinstated with back pay, this court in its prior opinion necessarily decided the order was proper. (Cf. *Tsarnas* v. *Bailey* (1962) 205 Cal.App.2d 593, 595 [23 Cal.Rptr. 336] [where the prior opinion affirmed the judgment on all matters except the amount of damages, the court necessarily upheld the finding defendant breached the contract, which then became the law of the case]; *Johnson* v. *Holt* (1959) 173 Cal.App.2d 107, 108 [342 P.2d 398] [by its prior opinion affirming the action of the trial court in permitting the filing of the

amended complaint, the court necessarily ruled the amended complaint stated a cause of action and that ruling became the law of the case].) That ruling is therefore the law of the case and cannot be raised on this appeal. (*Stock* v. *Meek* (1952) 114 Cal.App.2d 584, 586 [250 P.2d 622]; 9 Witkin, *op. cit. supra,* § 737, p. 705.)

## IV

 Finally, appellants contend respondent is not entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5. Again, we disagree.

Code of Civil Procedure section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The trial court originally awarded respondent attorney's fees, to be paid to his employee organization, the Los Angeles Police Protective League. On appeal, the award was challenged. This court remanded for a determination whether attorney's fees were still warranted in light of the views expressed in the opinion. (*Hanna* II, *supra.*) Noting that on remand the trial court would be fashioning an appropriate remedy for violations of the Act, *Hanna* II stated: "Depending on the trial court's decision, this case may confer a significant benefit on a large class of persons (i.e., the remedies available to other police officers in cases where the Act is violated) warranting an award of attorneys' fees."

Following remand, the trial court again awarded attorney's fees to respondent to be paid to the Los Angeles Police Protective League. The trial court found the award was warranted for the following reasons: "(1) [Appellants] have persistently contended that suppression of evidence from an administrative hearing is improper absent a violation of Constitutional rights. [Respondent] has, by this litigation, succeeded in establishing the availability of such a remedy for violation of the [Act]. [¶] (2) The judgment in this case confers a significant benefit on a large class of persons, by establishing the availability of a suppression order as a remedy for other police officers employed by the Los Angeles Police Department, in cases where the Act is violated."

The trial court further examined the four elements of the test to determine whether an award of attorney's fees under section 1021.5 was appropriate. It found, based on *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874], the rights and protections in the Act are matters of statewide concern affecting the public interest. Further, a significant benefit was conferred on a large class of persons, as stated above. In addition, at the time the litigation was commenced, the monetary value of the litigation was "speculative at best." Appellants took the position the Act did not even apply to charter cities like Los Angeles; that issue was subsequently resolved in *Baggett,* the Supreme Court finding the Act did apply *(id.,* at p. 140). Thus the necessity and financial burden of the litigation were great in comparison to the likelihood of securing the remedy of suppression for violations of the Act. Finally, the cost of prosecuting the case should not, in the interest of justice, be paid out of any back pay respondent would receive upon reinstatement.

In support of their contention the trial court abused its discretion in making the award of attorney's fees (*Baggett* v. *Gates, supra,* 32 Cal.3d at pp. 142-143), appellants essentially argue the trial court abused its discretion in applying the remedy of exclusion, therefore respondent has not vindicated an important right (*Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1291-1292 [240 Cal.Rptr. 872, 743 P.2d 932]), and the lawsuit is no longer of any public interest. In view of the conclusion reached in part I, *ante,* that there was no abuse of discretion in ordering exclusion of respondent's statements, this argument is of no merit.

This litigation did establish the availability of the remedy of exclusion for violations of the Act and, as noted in the prior appellate opinion, "confer[red] a significant benefit on a large class of persons (i.e., the remedies available to other police officers in cases where the Act is violated)" (*Hanna II, supra*). It may be considered to have conferred a significant benefit on the general public as well; *Baggett* v. *Gates, supra,* 32 Cal.3d at page 143 holds enforcement of the Act benefits the public by helping to maintain stable relations between public safety officers and their employers, thus assuring effective law enforcement.

Moreover, respondent's monetary recovery resulting from the litigation will be minimal—back pay from the date of discharge *less* his earnings as a police officer with the Culver City Police Department. This makes the award of attorney's fees to cover the cost of litigation appropriate, and the interests of justice would seem to require that the cost of respondent's

attorney's fees not come out of his recovery. Accordingly, the trial court did not abuse its discretion in awarding attorney's fees to respondent.

The judgment is affirmed.

**DEVICH, J.,** Concurring.— Under the facts of this case, had the only violation of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq., hereafter the Act) been City of Los Angeles's (City) failure to inform Officer Hanna that any statement made during the internal affairs investigation could not be used against him in a subsequent criminal prosecution (see § 3303, subd. (g); *Lybarger* v. *City of Los Angeles* (1985) 40 Cal.3d 822, 829 [221 Cal.Rptr. 529, 710 P.2d 329]), I would agree with the dissenting opinion that, under the rationale of *Williams* v. *City of Los Angeles* (1988) 47 Cal.3d 195, 201 [252 Cal.Rptr. 817, 763 P.2d 480], suppression of Officer Hanna's statements is an inappropriate remedy.

However, unlike *Williams,* this case involves much more than a *Lybarger* violation.[1] In addition to failing to admonish Officer Hanna pursuant to *Lybarger,* City also violated section 3303 of the Government Code by denying Officer Hanna the presence of a representative of his choice (subd. (h)), access to the tape recording of the first interrogation prior to the second interrogation (subd. (f)), and copies of Ms. Sullivan's complaint and the police officers' investigation reports (subd. (f)).

In light of these violations, which may have affected Officer Hanna's defense to the charges brought against him, I cannot conclude that the trial court's order suppressing Officer Hanna's statements constituted an abuse of discretion. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].)[2]

**ORTEGA, J.**—I respectfully dissent. I see no real distinction between the instant matter and *Williams* v. *City of Los Angeles* (1988) 47 Cal.3d 195 [252 Cal.Rptr. 817, 763 P.2d 480]. In holding that exclusion of the *Williams* statement was not a proper remedy but refusing to rule broadly that the exclusionary rule does not apply in police disciplinary proceedings, the California Supreme Court stated: "That Williams was not properly advised by the investigators constituted only a denial of the additional statutory protection conferred by the [Public Safety Officers Procedural Bill of Rights Act]. [Citation.] We thus have no cause to consider whether the exclusion-

---

[1]This court's unpublished opinion in *Hanna* v. *City of Los Angeles* (Mar. 23, 1987) B016427 eliminated the *Lybarger* violation as a basis for a remedy.

[2]The dissenting opinion's interpretation of *Williams* fails to suitably take into account the Supreme Court's specific statement that suppression may be an appropriate remedy for statutory violations of the Act. (47 Cal.3d at p. 203, fn. 4.)

ary rule should apply to bar consideration at a police disciplinary hearing of evidence obtained by unconstitutional methods." (*Williams, supra,* at p. 202.) The court further stated: "[W]e are not concerned here with the applicability of the exclusionary rule, but only with the appropriateness of a ban on the use of a particular piece of evidence [the officer's statement]. We are again urged by the City to rule broadly; specifically, that evidence may never be excluded from consideration as a remedy for a violation of the act. We decline this invitation as well." (*Ibid.*)

While the court may have declined to enunciate a broad exclusionary rule, it made it clear that exclusion of an officer's statement (as opposed to other evidence) is not appropriate in the absence of violations more egregious than those encountered by Hanna where, as here, the violation of the officer's rights had no effect on the outcome. To paraphrase *Williams,* it cannot be said of Hanna, who chose to give a statement, that there is any possibility his case could have ended differently even had he been given the full benefit of all his statutory rights. Hanna's statement should not have been excluded.

The admissibility of Hanna's statement eliminates the basis relied on by the majority in upholding the award of attorney's fees.

I would hold that the exclusion of Hanna's statement and the consequent award of attorney's fees were abuses of the trial court's discretion.