Filed 9/21/21 San Diego County Water Auth. v. Metropolitan Water Dist. of So. Cal. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN DIEGO COUNTY WATER AUTHORITY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA, et al., <br><br> Defendants and Appellants. | A161144 <br><br><br> (City and County of San Francisco Super. Ct. Nos. CPF10510830 & CPF12512466) |

Metropolitan Water District of Southern California (Metropolitan) appeals from a judgment and peremptory writ of mandate, which were entered after the remittitur issued following its appeal in *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2017) 12 Cal.App.5th 1124 (*SDCWA v. MWD*). We affirm.

**FACTS** [1]

---

[1] On appeal, Metropolitan has filed a request for judicial notice of certain pleadings filed by the San Diego County Water Authority (Water Authority) in three other pending superior court actions between the parties. The Water Authority has also filed a request for judicial notice regarding certain

1

Our factual and procedural background is taken, in part, from our prior opinion in *SDCWA v. MWD, supra,* 12 Cal.App.5th 1124.

## A.    Background

Metropolitan, established by statute in 1928, repealed and reenacted in 1969 (Stats. 1969, ch. 209, §§ 1,2, p. 492, West's Ann. Wat.-Appen. (1995 ed.) §§ 109-1 et. seq.[2]), was formed to " 'construct and operate the 242-mile Colorado River Aqueduct' to transport Colorado River water" to cities and communities in Southern California.  (*SDCWA v. MWD, supra,* 12 Cal.App.5th at p. 1131.)  "Today, Metropolitan imports water from two principal sources, the Colorado River, using its Colorado River Aqueduct, and Northern California via the state-owned California Aqueduct," and delivers the water to a voluntary collective of 26-member public agencies, including the Water Authority.  (*Ibid.*)  In turn, the Water Authority "delivers the water to retail water agencies serving households and businesses in San Diego County."  (*Id.* at p. 1130.)

"The Water Authority has no means of transporting Colorado River water other than over Metropolitan's aqueduct and thus opened negotiations

---

documents (pleadings and orders) filed in one of those superior court actions. We deny both parties' requests as those documents are not necessary to the resolution of this appeal.  (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13 ["[a]s a general matter, judicial notice is not taken of matters irrelevant to the dispositive points on appeal"].)

Metropolitan also seeks judicial notice of certain proceedings before its Board of Directors concerning the repeal of section 4405 of Metropolitan's Administrative Code.  We grant the request.  (See *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 7, fn. 2 [judicial notice proper for city council resolution; Evid. Code, § 452, subd. (b) [judicial notice permissible for "legislative enactments issued by or under the authority of . . . any public entity in the United States"].)

[2]      All citations to Water Code Appendix sections are to uncodified acts reprinted at 72B West's Annotated Water Code Appendix.

with Metropolitan to transport, or 'wheel' . . . water. 'Wheeling' is the industry term for '[t]he use of a water conveyance facility by someone other than the owner or operator to transport water.' [Citation.] California law mandates that the owner or operator of a water conveyance facility allow others to use up to 70 percent of the facility's unused capacity to transport water upon payment of 'fair compensation.' " (*SDCWA v. MWD, supra,* 12 Cal.App.5th at p. 1135; see Wat. Code, §§ 1810, 1814.) "Metropolitan and the Water Authority failed to reach a wheeling agreement but they did reach a functionally related water exchange agreement" in 1998. (*SDCWA v. MWD, supra,* at p. 1135.) Five year later, "in 2003, Metropolitan and the Water Authority executed an amended exchange agreement," in which "the parties agreed to an initial price with future prices linked to standard water rates, lawfully set. The parties agreed: 'The price on the date of execution of this agreement shall be two hundred fifty three dollars ($253.00) [per acre-foot]. Thereafter, the price shall be equal to the charge or charges set by Metropolitan's Board of Directors pursuant to applicable law and regulation and generally applicable to the conveyance of water by Metropolitan on behalf of its member agencies.' " (*Id.* at pp. 1136-1137, fn. omitted.)

"Metropolitan is required by statute to establish rates that will generate sufficient revenue to pay its expenses. (Stats. 1969, ch. 209, §134, p. 506, West's Ann. Wat.-Appen., *supra*, § 109-134, p. 40.) [3]" (*SDCWA v.*

---

[3] "Water Code Appendix section 109-134 provides, in relevant part: Metropolitan's board 'shall fix such rate or rates for water as will result in revenue which, together with revenue from any water standby or availability service charge or assessment, will pay the operating expenses of the district, provide for repair and maintenance, provide for payment of the purchase price or other charges for property or services or other rights acquired by the district, and provide for the payment of the interest and principal of the bonded debt' Metropolitan incurs. (Stats. 1969, ch. 209, § 134, p. 506, West's Ann. Wat.-Appen., *supra*, § 109-134, p. 40.)"

*MWD, supra,* 12 Cal.App.5th at p. 1137.) "For years, Metropolitan utilized a single water service rate. In 1998, Metropolitan began a lengthy process to replace the single rate with a new rate structure allocating charges to separate cost components, including water supply and transportation." (*Id.* at p. 1137.) "Metropolitan's water service rates are now a combination of component rates calculated to recover its costs incurred in purchasing and transporting water to its member agencies." (*Id.* at p. 1138.)

The " 'supply' rates are calculated to recover costs incurred in purchasing water supply from the State Water Project and Colorado River and in maintaining and developing additional water supplies through transfers and other transactions." (*SDCWA v. MWD, supra,* 12 Cal.App.5th at p. 1138.) The "transportation rates are designed to recover the costs of operating and maintaining [Metropolitan's] vast water conveyance infrastructure," and consist of three subcomponents –the " 'system access rate,' " the " 'system power rate,' " and a " 'water stewardship rate.' " (*Id.* at p. 1138.) Two subcomponents are of relevance here. The " 'system access rate' is designed to recover the capital, operating, and maintenance costs associated with transportation facilities, including 'conveyance' facilities that transport water from the State Water Project and Colorado River Aqueduct and 'distribution' facilities that transport water within Metropolitan's service area. (Former Admin. Code, § 4123.) . . . A 'water stewardship rate' is designed to recover the costs of conservation programs and other water management programs that reduce and defer system capacity expansion costs. (See former Admin. Code, § 4124.)" (*SDCWA v. MWD, supra,* 12 Cal.App.5th at p. 1138.)

"Metropolitan provides both full service, in which it supplies and transports water, and wheeling service, in which it transports water supplied

4

by others. . . . The full-service rate includes the supply rate, system access rate, system power rate, and water stewardship rate. The wheeling rate includes the system access rate and water stewardship rate. [Citation.] A recipient of wheeling service does not pay the system power rate but pays only the actual cost of the power used to transport the water it receives from a third party. [¶] Under the exchange agreement as amended in 2003, the Water Authority agreed to pay charges 'generally applicable to the conveyance of water by Metropolitan on behalf of its member agencies' which, the parties agree, are the system access rate, water stewardship rate and, unlike under a standard wheeling agreement, the system power rate." (*SDCWA v. MWD, supra,* 12 Cal.App.5th at pp. 1138-1139.)

"During the administrative process in which Metropolitan's rates were established, the Water Authority challenged the propriety of applying the system access and water stewardship rates to the wheeling service. Metropolitan's general manager responded that a system access rate was adopted, rather than individual aqueduct access rates, because 'Metropolitan's system is not a point-to-point service, but an interconnected regional system.' . . . [¶] As to the water stewardship rate – 'a volumetric charge upon all water moved through the system that provides a dedicated source of funding for conservation and local resources development' – Metropolitan's general manger asserted that all users benefit from water conservation and thus all users are properly charged for it . . . ." (*SDCWA v. MWD, supra,* 12 Cal.App.5th at p. 1139.)

### B.    Initial Trial Court Proceeding

"In June 2010, the Water Authority filed its initial action challenging the water rates Metropolitan adopted in April 2010 for 2011 to 2012. In June 2012, the Water Authority filed a second action challenging Metropolitan's

2013-2014 rates. The Water Authority also sought damages for breach of contract of the provision in the amended water exchange agreement providing that 'the price shall be equal to the charge or charges set by Metropolitan's Board of Directors pursuant to applicable law and regulation and generally applicable to the conveyance of water by Metropolitan on behalf of its member agencies.' The Water Authority maintained that Metropolitan's rates [were] not lawful conveyance rates [due to the inclusion of the costs subcomponents of its transportation rates, in relevant part here, the system access rate and the water stewardship rate], and, thus, not properly charged under the amended agreement." (*SDCWA v. MWD, supra,* 12 Cal.App.5th at pp. 1139-1140.)

"The [trial] court informally coordinated the 2010 and 2012 cases and bifurcated the bench trial. The court first determined the validity of Metropolitan's water rates and then decided the contract claim. . . . [¶] In phase one, the court found 'no substantial evidence to support Met[ropolitan]'s inclusion in its transportation rates, and hence in its wheeling rate, of 100% of (1) the [system access rate which represented] sums it pays to the California Department of Water Resources [for the State Water Project] disaggregated by the [State Water Project] as for transportation of that purchased water; and (2) the costs for conservation and local water supply development programs recovered through the Water Stewardship Rate. . . . [T]hese rates over-collect from wheelers, because at least a significant portion of these costs are attributable to supply, not transportation. These rates – the System Access Rate . . . , Water Stewardship Rate, and Met[ropolitan]'s wheeling rate – therefore violate . . . the wheeling statutes [(Wat. Code, § 1810 et. seq.] . . . and the common law. The court invalidates each rate for both the 2011-2012 and 2013-2014 rate

6

cycles.' [¶] In phase two, the . . . court found that Metropolitan had breached the price term of the 2003 exchange agreement because it charged the Water Authority transportation rates that were not 'consistent with law and regulation.' The court awarded the Water Authority damages equal to the total amount the water agency paid under the exchange agreement from 2011 to 2014 for State Water Project costs and the water stewardship rate." (*SDCWA v. MWD, supra,* 12 Cal.App.5th at pp. 1140-1141.) The court entered judgment in favor of the Water Authority and issued a peremptory writ of mandate in accordance with its statement of decision.

## C. Metropolitan's Appeal

On appeal, Metropolitan challenged portions of the judgment and the peremptory writ of mandate. (*SDCWA v. MWD, supra,* 12 Cal.App.5th 1124.) Finding the central issue in dispute was one of cost allocation, we concluded: "The inclusion of Metropolitan's system-wide transportation costs, including transportation charges paid to the State Water Project, in the calculation of its wheeling rate does not, as the trial court held, violate the wheeling statutes, Proposition 26 (Cal. Const., art. XIIIC, § 1, subd. (e)), Government Code section 54999.7, subdivision (a), the common law, or the terms of the parties' exchange agreement." (*SDCWA v. MWD, supra*, at p. 1130.) However, we agreed "with the trial court that the allocation of 'water stewardship' charges to the wheeling rate" was improper under the wheeling statutes and the common law, and therefore, the Water Authority was "entitled to recover the overcharges that resulted from inclusion" of the water stewardship charges in the rate charged by Metropolitan under the parties' exchange agreement. (*Ibid.*)

We specifically found there was no substantial evidence that the water stewardship rate used to fund conservation programs was recoverable as

7

" 'fair compensation' " for use of the water conveyance system, under the wheeling statutes (Wat. Code, § 1811, subd. (c)). (*SDCWA v. MWD*, *supra*, 12 Cal.App.5th at p. 1151.) We also held, as did the trial court, that because the water stewardship rate was supply related, not transportation related, its inclusion as a component of the wheeling rate and exchange agreement transportation rates was in violation of the common law rule that "rates are invalid if they are not based 'on the cost of services or some other reasonable basis.' " (*Ibid.*)

Lastly, we agreed with the trial court that, "to the extent that the price Metropolitan charged the Water Authority for wheeling was based on an unlawful rate [improper inclusion of water stewardship rate], there was a breach of the amended exchange agreement providing for future prices 'equal to the charge or charges set by Metropolitan's Board of Directors pursuant to applicable law and regulation and generally applicable to the conveyance of water by Metropolitan on behalf of its member agencies.' Since we [had] concluded that Metropolitan's system access rate was not improperly included in the wheeling charges, there was no breach in that respect and damages should not have been calculated on that erroneous premise. [However,] [s]ince the water stewardship rate was unlawfully charged for the conveyance of water, there was a breach of the agreement in that respect," and "[t]he Water Authority [was] entitled to recover damages limited to the overcharges attributable to the unlawful inclusion of the water stewardship rate." (*SDCWA v. MWD*, *supra*, 12 Cal.App.5th at p. 1154.) Accordingly, we reversed the judgment, vacated the peremptory writ of mandate, and remanded the matter for the recalculation of damages, and other proceedings consistent with the views expressed in our opinion. (*Id*. at p. 1166.)

### D. Trial Court Proceeding After Remittitur

Following the remittitur, the trial court recalculated the Water Authority's contract damages, and again entered judgment in favor of the Water Authority and issued a peremptory writ of mandate.

The judgment explicitly provided that "the Court of Appeal Opinion and this Court's July 25, 2018 Order are incorporated herein by reference." The judgment further provided, in pertinent part, as follows:

"1.     Final judgment is ENTERED in favor of [Water Authority] and against [Metropolitan] on the First Cause of Action in the 2010 and 2012 Actions, for writ of mandate, because Metropolitan's inclusion of the Water Stewardship Rate in the wheeling rate and the transportation rates charged under the Exchange Agreement [4] is unlawful.  See *SDCWA v. MWD*, 12 Cal.App.5th at [pp.] 1130, 1138-39, 1150-52, 1154-55.  A peremptory writ of mandate shall issue, under seal of this Court, commanding Metropolitan to enact only legal wheeling and transportation rates in the future and to exclude the costs of conservation programs and other demand management programs, enacted in these cases as the Water Stewardship Rate, from Metropolitan's wheeling rate published in Section 4405 of Metropolitan's Administrative Code and from the transportation rates charged under the Exchange Agreement.  *See id*.; *see also* Code Civ. Proc. § 1095 (providing that, when judgment in a writ of mandate action is 'given for the applicant, the applicant may recover the damages which the applicant has sustained . . . and a peremptory [writ of] mandate must also be awarded without delay').

---

[4]     "The 'Exchange Agreement' refers herein to the October 10, 2003 Amended and Restated Agreement Between the Metropolitan Water District of Southern California and the San Diego County Water Authority for the Exchange of Water.  The Exchange Agreement is the source of the Water Authority's breach of contract claims."

9

"2.    Final judgment is ENTERED in favor of the Water Authority and against Metropolitan on the Second Cause of Action in the 2010 and 2012 Cases, for declaratory relief, because Metropolitan's inclusion of the Water Stewardship Rate in the wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful.  See *SDCWA v. MWD*, 12 Cal.App.5th at [pp.] 1130, 1138-39, 1150-52, 1154-55.  In accordance with the Court of Appeal's holding that it is 'improper' to allocate to the wheeling rate ' "water stewardship" charges' for the recovery of the 'costs of conservation programs and other water management programs,' the Court hereby declares that the inclusion of the Water Stewardship Rate in Metropolitan's wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful and invalid and, further, that Section 4405 of Metropolitan's Administrative Code, entitled 'Wheeling Service,' is unlawful and invalid because it includes the Water Stewardship Rate in the rates charged for wheeling service.  [*SDCWA v. MWD*] at [pp.] 1130, 1138; *see also id*. at pp. 1138-39, 1150-52, 1154-1155.

"3.    Final Judgment is ENTERED in favor of the Water Authority and against Metropolitan, and all other persons, on the Third Cause of Action in the 2010 and 2012 Actions, for determination of invalidity, because Metropolitan's inclusion of the Water Stewardship Rate in the wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful.  See *SDCWA v. MWD*, 12 Cal.App.5th at [pp.] 1130, 1138-39, 1150-52, 1154-55.  In accordance with the Court of Appeal's holding that it is 'improper' to allocate to the wheeling rate ' "water stewardship" charges' for the recovery of the 'costs of conservation programs and other water management programs,' the Court hereby determines that the inclusion of the Water Stewardship Rate in Metropolitan's wheeling rate and the

10

transportation rates charged under the Exchange agreement is unlawful and invalid and, further, that Section 4405 of Metropolitan's Administrative Code, entitled 'Wheeling Service,' is unlawful and invalid because it includes the Water Stewardship Rate in the rates charged for wheeling service. [*SDCWA v. MWD*] at [pp.] 1130, 1138; *see also id.* at [pp.] 1138-39, 1150-1152, 1154-55.  This judgment, 'if no appeal is taken, or if taken and the judgment is affirmed, shall . . . be forever binding and conclusive, as to all matters [ ]herein adjudicated or which at that time could have adjudicated, against [Metropolitan] and against all other persons, and the judgment shall permanently enjoin the institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive.'  Code Civ. Proc. § 870(a). [¶] . . . [¶]

"8.     This Court will retain continuing jurisdiction over the 2010 and 2012 Actions.

"9.     This is the final judgment in the 2010 Action and 2012 Action."

The trial court's peremptory writ of mandate provided as follows (bolded language in original):

"Final judgment having been entered on the first cause of action in the 2010 and 2012 Actions, for writ of mandate, **METROPOLITAN [IS] HEREBY COMMANDED** to enact only legal wheeling and transportation rates in the future, and specifically, not to do the things that Division Three of the First Appellate Court of Appeal held were unlawful in its Opinion dated June 21, 2017.  *San Diego Cty. Water Auth. v. Metropolitan Water Dist. of S. Cal.*, 12 Cal. App. 5th 1124, 1166 (2017), *as modified on denial of reh'g* (July 18, 2017), *review denied* (Sep. 27, 2017).  The Opinion is incorporated here by reference.

11

"**METROPOLITAN IS FURTHER HEREBY SPECIFICALLY COMMANDED** to henceforth exclude the costs of conservation programs and other demand management programs, enacted in the above-named cases as the Water Stewardship Rate, from Metropolitan's wheeling rate published in Section 4405 of Metropolitan's Administrative Code and from the transportation rates charged under the October 10, 2003 Exchange Agreement between Metropolitan and the San Diego Water Authority."

Metropolitan's timely appealed.

## DISCUSSION

### I.      Challenges to Judgment

Metropolitan raises various arguments seeking modification of the judgment, none of which require the requested relief.

Metropolitan initially and inaccurately contends the judgment materially varies from this court's remittitur. "Our remittitur directions are contained in the dispositional language of our previous opinion." (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 (*Ayyad*).) While we are not bound by the trial court's interpretation of those directions, "[w]e look to the wording of our directions to determine whether the trial court's [judgment] comports with them." (*Ibid.*) "When, as in this case," we remand for further proceedings, our directions "must be read in conjunction with the opinion as a whole." (*Ibid.*)

"Whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review." (*Ayyad*, *supra*, 210 Cal.App.4th at p. 859.) Here, the judgment's adjudication of the three causes of action for writ relief, declaratory relief, and a determination of invalidity (Code Civ. Proc., §§ 860 et. seq.) (first, second, and third causes of action) are consistent with our prior opinion. Metropolitan asserts, however, that the provisions should be

modified to include language indicating that the granted relief only applies to Metropolitan's water stewardship rate in effect from January 1, 2011 through December 31, 2014 so that the judgment is not misconstrued as an adjudication that water rates set after 2014 are unlawful if they include a water stewardship rate. We disagree.

The Water Authority's challenge was to Metropolitan's practice of allocating certain subcomponents or categories of costs (service access rate and water stewardship rate) recoverable as transportation costs in its wheeling rate and the transportation rates charged under the exchange agreement. As reflected in the judgment, we held invalid Metropolitan's practice of allocating a water stewardship rate (funding for water conservation programs) as a cost subcomponent (recoverable as a transportation cost in its wheeling rate and the transportation rates charged under the exchange agreement). (*SDCWA v. MWD*, *supra*, 12 Cal.App.5th at pp. 1139, 1151.) Our determination concerned a particular category of costs ("water stewardship rate") which did not vary from year to year. (*Ibid*.) Thus, there was no need nor did we intend to limit our determination to any particular rate year.

In seeking a modification to include a time referent related to a particular rate year, Metropolitan mentions no circumstance under which in any future year it would be able to establish that the water stewardship rate (defined as " 'a volumetric charge upon all water moved through the system that provides a dedicated source of funding for conservation and local resources development' " (*SDCWA v. MWD*, *supra*, 12 Cal.App.5th at p. 1139)) could be properly included as a cost subcomponent recoverable as a transportation cost in the wheeling rate or transportation rates charged under the exchange agreement. Accordingly, we see no reason to direct the

13

modification as argued by Metropolitan. That Metropolitan apparently believes that in some future rate year it can recover a water stewardship rate as a cost subcomponent of its transportation costs in its wheeling rate or the transportation rates charged under the exchange agreement, thereby contravening our prior opinion, supports the trial court's continuing jurisdiction to assure compliance with its judgment. (See *San Luis Coastal Unified School Dist. v. City of Morro Bay* (2000) 81 Cal.App.4th 1044, 1046, 1055 (*San Luis Coastal Unified School Dist.*) [on remand in a mandamus proceeding to compel the city to comply with the " 'Wheeling Statutes,' " the appellate court directed the trial court to order the city to determine, among other criteria, fair compensation for use of its water conveyance facilities as required under Wat. Code § 1812, and further found it would be prudent if the trial court retained continuing jurisdiction to assure compliance with the trial court's order].)

The judgment also contains a declaration describing the basis on which Metropolitan's water rates were declared to be invalid – the inclusion of the water stewardship rate (costs for water conservation programs, also referred to as " 'demand-management programs' " by Metropolitan) as a cost subcomponent recoverable as a transportation cost in its wheeling rate and transportation rates charged under the exchange agreement. (*SDCWA v. MWD*, *supra*, 12 Cal.App.5th at p. 1150.) Metropolitan complains, however, that the judgment should be modified to provide for an additional declaration that "Metropolitan's allocation of its [State Water Project] transportation costs to its transportation rates and wheeling rate is *not* 'contrary to law' and does *not* 'violate constitutional, statutory, and common law, as well as Metropolitan's own Administrative Code and Board policy directives.' " Again, we disagree.

14

The trial court properly adjudged that the Water Authority was entitled to relief on its second cause of action for declaratory relief and set forth the theory that supported the relief – improper inclusion of the water stewardship rate.  Even if the court erred in failing to mention that the Water Authority had not been successful on another theory (Metropolitan's water rates were invalid due to its inclusion of the State Water Project transportation costs), no relief is required to cure this purported error as our prior opinion is sufficiently certain and explicit as to what Metropolitan can or cannot include as cost subcomponents of its transportation costs in its wheeling rate and the transportation rates charged under the exchange agreement.  (See *Savient Pharmaceuticals, Inc. v. Department of Health Services* (2007) 146 Cal.App.4th 1457, 1464 [appellant's complaint that the trial court failed to declare the rights of the parties, of itself, provides no basis for reversal as "an appellate opinion memorializes the rights of the parties"]; *Teresi v. State of California* (1986) 180 Cal.App.3d 239, 245, fn. 4 [appellate court noted that "[t]he object of the declaratory relief action is served by our opinion that plaintiff cannot recover on the legal theory he asserts"]; see also *Gelfand v. O'Haver* (1948) 33 Cal.2d 218, 222 ["resort may be had to the findings of fact and conclusions of law" in a court's opinion "to clarify any uncertainty or ambiguity in a judgment"].)  The cases cited by Metropolitan do not require a different outcome.

In sum, we conclude there is no need to modify the judgment in its current form.  The judgment did not exceed our remittitur and in future proceedings the parties and courts may consider our prior opinion's plain rulings for the purposes of understanding and interpreting the judgment. [5]

---

[5]     In its reply brief, Metropolitan argues, for the first time, that the judgment should be modified because it has already suffered prejudice as the trial court relied on its failure to grant Metropolitan declaratory relief in its

15

## II.    Challenges to Peremptory Writ of Mandate

Metropolitan also raises various arguments challenging the issuance of the peremptory writ of mandate, none of which hold water.

We initially reject Metropolitan's argument that the peremptory writ of mandate must be vacated because its issuance exceeded our remittitur.  In support of its argument, Metropolitan asks us to consider that in our prior opinion we did not find it had an existing legal duty to perform any act, ministerial or otherwise, for the Water Authority's benefit.  It also avers that our disposition in the prior opinion did not direct the trial court to issue a writ commanding Metropolitan to perform any act.

However, in resolving the prior opinion, we had no reason to address the trial court's authority to grant writ relief to the Water Authority. Instead, we dealt only with the substantive arguments of the parties, leaving to the trial court on remand to reissue a judgment and peremptory writ of mandate consistent with our rulings.  "The general direction upon the reversal of the judgment was, that the [trial court] should proceed to dispose of the case remitted, in pursuance of the principles of the opinion." (*Raun v. Reynolds* (1860) 15 Cal. 459, 468.)  Because we did not preclude or otherwise limit the nature of the judgment and peremptory writ of mandate that could be reissued following the further proceedings ordered by this court, the remittitur did not prevent the trial court from "taking such a course of

judgment as one reason for the award of costs to the Water Authority as the prevailing party.  However, by raising this specific issue of prejudice in its reply brief for the first time, the Water Authority has been deprived of an opportunity to address the matter on this appeal.  Because the trial court's February 10, 2021 cost order is the subject of a separate appeal in case No. A162168, we do not now address Metropolitan's argument and our decision should not be read as expressing any opinion regarding the effect of the judgment's provisions vis a vis the award of costs to Water Authority as the prevailing party.

16

proceedings as would give full effect to the *principles* of the opinion of this [c]ourt." (*Ibid*.; italics in original.; see *Eldridge v. Burns* (1982) 136 Cal.App.3d 907, 917 ["language remanding for 'further proceedings consistent with the opinion' does not in itself clearly and unambiguously determine the effect of an opinion on remand"].)

There is also no merit to Metropolitan's substantive argument that the trial court should not have issued a peremptory writ of mandate because Metropolitan had no clear, present, and ministerial duty to act for the benefit of the Water Authority. "An action in ordinary mandamus is proper where, as here, the claim is that an agency failed to act as required by law." (*California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 705; see *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [a writ will issue where there is "[a] clear, present and usually ministerial duty upon the part of the respondent," and "a clear, present and beneficial right in the petitioner to the performance of that duty"].)

In its 2010 and 2012 actions, the Water Authority's requests for mandamus were predicated on a claim that Metropolitan failed to act as required by law in determining "fair compensation" for a wheeler's use of an owner's water conveyance system for transporting water under both the Wheeling Statutes and the parties' exchange agreement under which Metropolitan had a duty to calculate water rates pursuant to applicable law and regulation. "Our state Constitution provides that: 'The right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law.' (Cal. Const., art. X, § 6.) [¶] The wheeling statutes provide a basis for the Water

17

Authority to use Metropolitan's conveyance facilities upon the payment of fair compensation. (Wat. Code, § 1810.)" (*SDCWA v. MWD, supra*, 12 Cal.App.5th at p. 1166 [Siggins, J., concurring].) Water Code section 1812 specifically requires that a local public agency owning the water conveyance facility, in this case Metropolitan, "shall in a timely manner determine . . . [t]he terms and conditions, including . . . fair compensation" for the use of its facilities (*id*, subd. (b)). The wheeling statutes also "make clear that 'any determination made under this article' can be the subject of a judicial challenge in which the court shall consider all relevant evidence, and the court shall give due consideration to the purposes and policies of this article.' (Wat. Code, § 1813.)" (*SDCWA v. MWD, supra*, at pp. 1166-1167 [Siggins, J., concurring].)

Thus, the writ properly compels Metropolitan to perform its clear and present legal obligation, pursuant to Water Code sections 1810 and 1812, requiring the owner of a water conveyance facility to timely determine fair compensation for use of its water conveyance services for the benefit of the Water Authority, which is an entity entitled to use the facilities upon the payment of fair compensation. By ordering Metropolitan to enact lawful wheeling and transportation rates in the future consistent with our prior opinion, the writ does no more than compel Metropolitan "to exercise [its] discretion under a proper interpretation of the applicable law." (*California Assn. for Health Services at Home v. State Dept. of Health Care Services* (2012) 204 Cal.App.4th 676, 683 (*California Assn. for Health Services at Home*).)

Metropolitan also asserts that the second paragraph of the writ should be vacated because the command that it "henceforth" exclude the water stewardship rate from its "wheeling rate published in Section 4405 of [its]

18

Administrative Code" is "useless, unenforceable, unavailing, or of no practical benefit" to the Water Authority. In support of this argument, Metropolitan notes that after the August 13, 2020, issuance of the writ, Metropolitan's Board of Directors repealed section 4405 of its Administrative Code and Metropolitan no longer publishes or charges a pre-set wheeling rate,[6] facts of which we have taken judicial notice. (See fn. 1, *ante*.) The short answer to Metropolitan's argument is that " '[i]t is settled that the voluntary

_____

[6]     Metropolitan's Administrative Code former section 4405 provided, in pertinent part: "(b) The rates for wheeling service shall include the System Access Rate, Water Stewardship Rate and, for treated water, the Treatment Surcharge, as set forth in Section 4401. . . ."
        At the August 18, 2020, Board meeting, the Board received the report of its Finance and Insurance Committee explaining the reason for recommending the repeal of Metropolitan's Administrative Code section 4405 and the effect of the repeal: "Staff recommends that the Board repeal Metropolitan's pre-set rate for wheeling service (wheeling rate), which applies only to wheeling to member agencies for up to one year, and rescind the supporting Resolution 8520 [(Fixing and Adopting Wheeling Rates)]. The price for wheeling to member agencies for more than one year, and wheeling to third parties, is determined on a case-by-case basis and is set by contract. After the recommended action, the price for wheeling to member agencies for up to one year would also be established by contract on a case-by-case basis. [¶] All wheeling requests by member agencies and third parties would continue to be considered for approval in accordance with the Wheeling Statute, Water Code Section 1810, et seq. The recommended action would only discontinue a pre-set price for certain wheeling transactions. [¶] Staff makes this recommendation because one component of the wheeling rate – the Water Stewardship Rate – is suspended effective 2021 and 2022, and therefore the current wheeling rate cannot be applied. As Metropolitan intends to replace the Water Stewardship Rate, the wheeling rate cannot be applied in the future. The wheeling rate's continued inclusion in the Administrative Code is no longer necessary. . . . Two agreements exist with San Diego County Water Authority (SDCWA) that incorporate the Section 4405 wheeling rate as the contractual price term. However, now that the Water Stewardship Rate will no longer be in place, rendering the Section 4405 wheeling rate inoperative, the price term for those two agreements must be renegotiated."

19

discontinuance of alleged illegal practices does not remove the pending charges of illegality from the sphere of judicial power or relieve the court of the duty of determining the validity of such charges where by the mere volition of a party the challenged practices may be resumed.' " (*Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 928-929 [on review of an order declaring valid a county board of realtors' bylaw requiring all associate members to be primarily engaged in the practice of real estate, appellate court found appeal was still justifiable because although the rule had been discontinued there was no assurance the board would not reenact it in the future].)  Here, there is nothing in the August 18, 2020 Board proceedings that would preclude Metropolitan from a future re-enactment of former section 4405 of its Administrative Code.

Metropolitan alternatively argues that, if the issuance of the writ is upheld, we should nonetheless direct the trial court to modify it by removing the language in paragraph one commanding Metropolitan "to enact only legal wheeling and transportation rates in the future, and, specifically," so as to limit the writ to the issues litigated in these cases.  According to Metropolitan, the quoted writ language "is impermissibly overbroad and vague because it is not tethered to any of the legal infirmities the courts considered in these cases and because it fails to prescribe a standard of conduct sufficiently specific and free from subjectivity to forestall future differences of opinion" it may subject Metropolitan to contempt proceedings.  We disagree.

The writ does not include a general "obey the law" provision but is specifically focused on Metropolitan's statutory obligation to "*enact legal wheeling and transportation rates*" and "not to do the things that [this court] held were unlawful" in our prior opinion, which is specifically incorporated in

the writ.  (See *San Luis Coastal Unified School Dist.*, *supra,* 81 Cal.App.4th at pp. 1044, 1046, 1051 [on remand in a mandamus proceeding to compel the city to comply with the " 'Wheeling Statutes' " (Wat. Code §§ 1810 et. seq.), trial court was directed to enter an order compelling the city to make the statutorily required Wat. Code § 1812 determinations, including fair compensation for the use of the facilities]; see also *California Assn. for Health Services at Home*, *supra*, 204 Cal.App.4th at pp. 689-690 [appellate court directed trial court "to issue a supplemental writ of mandate compelling the Department to conduct a future rate review . . . in accordance with the state plan, section 30(A), the April 24, 2008, writ of mandate, and the provisions of this opinion"]; *Conlan v. Bonta´* (2002) 102 Cal.App.4th 745, 764 [appellate court directed trial court to issue a writ of mandate "directing the Department to adopt and implement procedures consistent with this opinion"]; *Graham v. State Bd. of Control* (1995) 33 Cal.App.4th 253, 261 [appellate court directed trial court "to issue a writ of mandate ordering the Board to take further proceedings consistent with this opinion"].)

In sum, we conclude there is no need to modify the peremptory writ of mandate in its current form.  The issuance of the peremptory writ of mandate did not exceed our remittitur and if Metropolitan considers the writ in "light of the findings of fact and conclusions of law" in our prior opinion, "and 'the purpose and object of the litigation which terminated in the [judgment],' . . . [it] will be able to comply with it."  (*City of Vernon v. Superior Court* (1952) 38 Cal.2d 509, 514).

## DISPOSITION

The judgment and peremptory writ of mandate are affirmed.  Plaintiff and respondent San Diego County Water Authority is awarded costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Chou, J.*

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22